Cheshire,
Sept. 6, 1938.

ALICE M. BARCLAY *v.* DUBLIN LAKE CLUB.

*Howard B. Lane* and *Roy M. Pickard* (*Mr. Lane* orally), for the plaintiff.

*Faulkner & Bell* and *Demond, Woodworth, Sulloway, Piper & Jones* (*Mr. Demond* orally), for the defendant.

PAGE, J. The question of Mr. Mauran's authority to make a contract of purchase binding upon the defendant is easily answered. It is not to be presumed. *Hilliard* v. *Railroad*, 77 N. H. 129. He had not such authority by virtue of the defendant's by-laws. There is no evidence whatever that he was given express authority in this or any prior instance. The corporate records show that when purchases or other acquisitions were made it was the custom for the directors or the stockholders to give express authority in advance to some official. The same held true of sales or leases of land owned by the club, except in one instance where apparently unauthorized action was ratified by the board.

This was the situation up to July 3, 1926, when Mr. Mauran re-

ported to the board that he had purchased the Mason property, and the board "upheld" his action. At the same time Mr. Mauran reported that he had "secured a legal option on the other Mason house for $3,000 and on the Barclay property for $2,500," and upon motion "that action was also upheld subject to the approval of the stockholders." It is significant that the Mason purchase appears to have been made by a group of Dublin people and that the club got title without expense to itself. That acquisition was unconditionally "upheld." The "legal options," however, were "upheld" subject to approval by the stockholders. There is no suggestion from these transactions that any officer lacking special authorization had any power to bind the club to a contract of purchase. The subsequent transactions were not such as to indicate any wider authority in Mr. Mauran or any other officer.

The plaintiff's theory that the stockholders ratified the contract with Mr. Mauran is untenable. They ratified what the board of directors had done. The board ratified a "legal option," according to the record. On the issue of ratification, the court permitted the directors to testify, subject to exception, that they knew the difference between an option and a contract of purchase, that they never saw the contract in question, that they believed and relied upon Mr. Mauran's statement that the contract was an option, and other circumstances tending to show what they intended to do when they voted to ratify. The evidence was not received as an interpretation of the contract or as a modification of the record. There was no error in admitting it. It bore upon the knowledge which is essential, if a principal is to ratify an unauthorized act. *Bohanan* v. *Railroad*, 70 N. H. 526. This is not a case where the defendant had ever before acquiesced in unauthorized acts of the agent so that he had apparent authority.

The contention that the defendant, its stockholders and directors, are estopped by silence to deny Mr. Mauran's authority or their ratification is not well grounded. They had no duty to speak concerning a matter of which, as far as appears, they were justifiably ignorant. They knew neither the text nor the legal interpretation of the contract. They were therefore not called upon to say, "Stop making improvements," of which they had no knowledge, "because we are under obligation to pay for them," when they supposed they had no such obligation. Or, "Don't rely upon Mr. Mauran's authority to obligate us," when they did not suspect that he had assumed to obligate them. Even if they had had knowledge that the plaintiff

was making improvements, it does not follow that they knew that she was making them in reliance upon a supposed obligation upon their part to pay for them upon her demand. *Phelps* v. *Gilchrist*, 28 N. H. 266, 278; *Allen* v. *Shaw*, 61 N. H. 95.

The argument that the directors ratified the contract without knowledge of the material facts and without desire to know all the facts and are therefore bound by what they did, is not a valid one. There was nothing, as far as appears, to warn them that Mr. Mauran was not correct in his description of the contract as one of option for $2,500. The directors were not called upon to search for "further facts" (Williston, Contracts, *Rev. ed.*, *s.* 278), nor did they "assume the risk" unless reasonable men would be put upon inquiry (*Hutchinson Co.* v. *Gould*, 180 Cal. 356). A finding that reasonable men would have inquired further was not compelled, nor, under the circumstances must the directors be said to owe any duty of inquiry to the plaintiff. Nor was it a compelled finding that the directors reasonably ought to have known that their failure to inquire would mislead the plaintiff and induce her to act to her damage. *Conway &c. Bank* v. *Pease*, 76 N. H. 319, 326, 328. It is not to be presumed that the directors were negligent in not knowing the precise meaning of the contract, so that their inaction would be equivalent to their doing something opposed to their expressed intention. *Smith* v. *Bank*, 72 N. H. 4, 9.

The admission of evidence that the property has not been enhanced in value by more than a quarter of the cost of improvements made since the contract was signed would have been error upon the construction heretofore given to the contract. But the evidence was not received for the purpose of modifying the contract sum. Its sole purpose was to aid the court in determining whether justice required that the case be reopened. It was properly admitted for that purpose, for the defendant would be entitled to no relief if the property were worth the amount of the judgment formerly ordered.

All of the other exceptions involve merely questions of the exercise of judicial discretion. *Watkins* v. *Railroad*, 80 N. H. 468. No occasion is seen for questioning the exercise of discretion except in the allowance of costs to the plaintiff as terms for the granting of a rehearing. The occasion for the rehearing was the mistake of the defendant in not advancing at the first hearing a defence which now appears to be a perfect one. The plaintiff has conceded that the defendant was not culpable in this respect. While the two hearings in the Superior Court may not, as the defendant argues, have occu-

pied more time than a single hearing at which all defences were raised, the mistake of the defendant has caused the plaintiff to come before us twice instead of once. The plaintiff claims for cash expenditures only the $125 paid prior to the former decision here. She was allowed $25 in addition, apparently for a counsel fee. Assuming that counsel fees in the Superior Court were not increased because of the defendant's mistake, they were increased in this court by the fact that the plaintiff had to come here twice instead of but once. We think there was error in not allowing a counsel fee fairly commensurate with one appearance in this court of counsel from Cheshire County. Upon modification of the order in this respect by the allowance of a reasonable further sum as costs to the plaintiff, the order will be

*Decree affirmed.*

All concurred.