## Vermont Division of State Buildings

### v.

## Town of Castleton Board of Adjustment; Robert McClure, Administrative Officer; C. William Mulholland; Victoria Mulholland; William L. Keach; Ruth F. Keach; Paul S. Huntley; Ellen Huntley; Irene Crossmon; Walter Crossmon and Florence Moriarty

[415 A.2d 188]

No. 122-79

Present: Barney, C.J., Daley, Billings and Hill, JJ., and Cook, District Judge, Specially Assigned

Opinion Filed April 8, 1980

*Davis, Rounds & Mayhew, P.C.,* Windsor, for Plaintiff.

*Corsones & Hansen,* Rutland, for Defendants.

**Billings, J.** This appeal arises as a result of the decision of the Town of Castleton Board of Adjustment on August 1, 1978, denying the appellee a zoning permit to convert and make additions to a former college dormitory for a model youth service program which would serve as an alternative to the now closed Weeks School. Disappointed with the decision, the appellee filed a complaint with the Rutland Superior Court.

The judgment here appealed was rendered in that action on January 19, 1979.

The facility which the State intends to create in Castleton would provide housing and instructional areas for juvenile delinquents and serve as a screening and temporary detention center for other juveniles. It would be staffed by approximately ten persons. The administrative officer for Town zoning matters issued a permit for these purposes. The individual appellants, Mulholland, Keach, Huntley, Crossmon and Moriarty then appealed the officer's action to the Board of Adjustment as adjoining property owners and interested persons within the purview of 24 V.S.A. § 4464(b) (3).

The decision of the administrative officer granting the permit characterized the use as R20 residential, under which the side setback minimum is fifteen feet. The proposed side setbacks are twenty-seven and thirty-eight feet. The permit was revoked by the Board on the ground that the use is nonresidential and that the appropriate side yard minimum requirements for the use were not met.

The appellee here then appealed this decision to the superior court alleging that the proposed use is residential and hence that the side yard requirements imposed by the Town had been met. In addition, the appellee contended in its complaint that it was exempt from compliance with local zoning and that it would suffer irreparable injury if the project were to be thwarted by the local zoning officials. The complaint was termed a notice of appeal and asked reversal of the Board's decision as well as declaratory and injunctive relief.

The court ordered the Board of Adjustment to issue a zoning permit on conditions substantially similar to those of the administrative officer's permit. It further ordered all the defendants to refrain from interfering with the appellee's project and declared that the appellee is subject to the Castleton Zoning Ordinance § 504.

The first question presented is whether the appellee properly perfected its appeal to the superior court, inasmuch as it did not file with the Board of Adjustment any notice of its appeal other than its complaint. If the complaint as served in this case meets the requirements of 24 V.S.A. §§ 4471–4472, then the appeal was properly perfected below.

■■■ The exclusive remedy of an interested person with respect to a decision of the board of adjustment not challenged on constitutional grounds is an appeal to the superior court. 24 V.S.A. §§ 4471–4472(a); *Fisher* v. *Town of Marlboro,* 132 Vt. 533, 534, 323 A.2d 577, 578 (1974). This appeal must be perfected pursuant to the terms of V.R.C.P. 74. *In re Rhodes,* 131 Vt. 308, 309, 305 A.2d 591, 592 (1973). This rule requires the appellant to file with the clerk of the agency a notice of appeal in the manner and within the time provided by V.R.A.P. 3 and 4.

V.R.A.P. 3(b) requires the appellant to take its appeal "by filing a notice of appeal with the clerk . . . within the time allowed by Rule 4," which is 30 days from the entry of the judgment below. In the case at bar, the secretary of the Board was served with the superior court complaint within the 30-day period. This service is a proper filing procedure, and it was accomplished within the requisite time.

The appellee contends that because the superior court action was purportedly begun by filing in the superior court, this service was not determinative of the validity of the appeal. "Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal." V.R.A.P. 3(b). Even though an appellant may attempt to invoke the jurisdiction of the superior court by an erroneous procedure, the timely filing of a notice with the board of adjustment gives the appeal validity. Cf. *In re Pfeiffer,* 136 Vt. 52, 53, 383 A.2d 633 (1978) (Although appellant timely filed pursuant to V.R.C.P. 75, the notice was sufficient to have invoked V.R.C.P. 74 jurisdiction and, therefore, the appellant's motion to amend should have been granted). The jurisdiction of the superior court over the appeal was invoked upon service of the complaint on the secretary of the Board of Adjustment.

■ *Harvey* v. *Town of Waitsfield,* 137 Vt. 80, 401 A.2d 900 (1979) is not to the contrary. In *Harvey* although the action commenced in superior court purported to be notice of appeal as well as an action for declaratory and injunctive relief and damages pursuant to 42 U.S.C. § 1983, it does not appear that service was made on the clerk of the board of adjustment within the required appeal period. Thus, to the extent that

*Harvey* states "that an entire failure to file a notice of appeal must . . . foreclose . . . review," it precludes appeal where the service of a complaint denominated as a notice of appeal is not timely served on the clerk of the board of adjustment. *Id.* at 82, 401 A.2d 900. *Harvey* also precludes jurisdiction in the superior court over actions for declaratory and injunctive relief based on nonconstitutional grounds where a notice of appeal is not timely filed with the clerk of the board of adjustment. *Id.* See also, *Shortle* v. *Board of Zoning Adjustment,* 136 Vt. 202, 203, 388 A.2d 430, 431 (1978). The superior court is without jurisdiction to hear such actions. 24 V.S.A. § 4472(d); *Fisher* v. *Town of Marlboro,* 131 Vt. 534, 535, 310 A.2d 119 (1973).

■ *Harvey* also does not turn upon the fact that the notice of appeal was denominated as a complaint. This Court continues to require as a minimum that the notice of appeal inform the parties and the tribunals concerned that the proceedings are not concluded so they may. respond accordingly. *Elliott* v. *Department of Employment Security,* 137 Vt. 536, 538, 409 A.2d 563, 565 (1979); *Badger* v. *Rice,* 124 Vt. 82, 84, 196 A.2d 503, 505 (1963). This minimum requirement was not addressed in *Harvey*. In the case at bar, however, the issue was raised, and the minimum requirement met in the complaint served on the Board of Adjustment.

■ Similarly, the fact that the appellant failed to furnish the secretary of the Board of Adjustment sufficient copies of the notice to enable the clerk to serve all persons pursuant to V.R.C.P. 74(a) and V.R.A.P. 3(e), as required by V.R.A.P. 3(d), is not fatal to the validity of the appeal. V.R.A.P. 3(b). It is grounds for corrective action in the superior court.

■ The next issue is whether the superior court may grant declaratory and injunctive relief in a properly commenced appeal. Although jurisdiction will not attach unless a proper appeal is commenced, this Court has affirmed a judgment order granting injunctive relief in which an action denominated as an appeal and a petition for injunctive relief, filed with the board of adjustment and the superior court respectively, were consolidated for disposition below. *Kalakowski* v. *John A. Russell Corp.,* 137 Vt. 219, 401 A.2d 906 (1979).

Thus, it is apparent that if an appeal is properly commenced, the superior court can grant declaratory and injunctive relief in conjunction with its de novo hearing.

■■ In recognizing that injunctive and declaratory relief is available to a party which has properly commenced an appeal to the superior court, this Court continues to interpret the phrase "exclusive remedy" as it is used in 24 V.S.A. § 4472 (a) to be a jurisdictional limitation, *In re Rhodes, supra,* and not a limitation on the remedies available in superior court after proper commencement of appeal. In addition, this interpretation is consistent, by negative inference, with § 4472 (d). If an appeal is properly taken from the decision of the board of adjustment, the appellant may contest either directly or indirectly the board's decision through any action otherwise available. We hold that since the board of adjustment has been timely served with a complaint meeting the content requirements of V.R.A.P. 3 (d), the jurisdiction of the superior court attached to the appeal and the court may grant such relief as is otherwise within its jurisdiction and consistent with law and equity.

■ The clerk of the court below acting on the complaint ex parte issued an order to show cause which was served with the complaint upon the Board of Adjustment. Until service of the complaint was made on the Board, the filing required by 24 V.S.A. § 4471, V.R.C.P. 74, and V.R.A.P. 3–4 had not occurred. An order to show cause can issue only after the commencement of the action, which is accomplished in zoning appeals only by filing with the board of adjustment. The issuance of the order was error, because prior to service of the complaint the court had no jurisdiction over the controversy.

■ Moreover, the injunction which issued below restraining the defendants from taking any action that would interfere with appellee's construction work is wholly inappropriate. An injunction is an extraordinary remedy and will not be granted routinely unless the right to relief is clear. *Committee to Save the Bishop's House* v. *Medical Center Hospital of Vermont, Inc.,* 136 Vt. 213, 218, 388 A.2d 827, 830 (1978). It may issue only in cases presenting some acknowledged and well-defined ground of equity jurisdiction, as when it is neces-

sary to prevent irreparable injury or a multiplicity of suits. *Vermont Accident Insurance Co.* v. *Burns,* 114 Vt. 143, 147, 40 A.2d 707, 709 (1944). Thus, to protect against judicial excess, V.R.C.P. 65(d) requires the court to specify with detail in its order granting an injunction the reasons for issuance and the acts restrained. *Brower* v. *Hill,* 133 Vt. 599, 604, 349 A.2d 901, 905 (1975). There was no such specificity of the order below, nor does there appear to be any evidence tending to suggest that the appellants were engaged or likely to engage in any conduct which would interfere with the appellee's construction except their pursuit of the legal process prescribed by 24 V.S.A. ch. 117. The issuance of the injunction was unwarranted and error.

 The question which must be answered concerning the trial court's interpretation and application of the Town zoning regulations is whether and to what extent the municipality may regulate the appellee's project. The appellee contends that its project is immune from municipal regulation under *Kedroff* v. *Town of Springfield,* 127 Vt. 624, 256 A.2d 457 (1969).

In *Kedroff,* this Court stated "that a municipality is not subject to zoning restrictions in the performance of its governmental, as distinguished from its corporate or proprietary activities." *Id.* at 629, 256 A.2d at 461. The Court held that the local ordinance, enacted pursuant to an old zoning enabling statute, 24 V.S.A. §§ 3001–3027, repealed by No. 334 of the Acts of 1967 Adjourned Session, section 2, "must yield to the legislative policy and laws of this State," as set forth in its water resources laws, 10 V.S.A. §§ 571–575, 901, 918, 991–1002. *Id.*

The Court used the distinction between governmental and proprietary functions only because there was no explicit legislative determination concerning the priority of the two statutory schemes. In order to invoke the distinction where there are competing statutory schemes, it is necessary that the party raising the issue of governmental immunity establish that there is no explicit legislative priority among the statutory schemes. There was no such explicit priority in *Kedroff.*

 Since *Kedroff* the legislature has enacted provisions governing the priority of municipal zoning powers over "[s]tate or community owned and operated institutions and

facilities." 24 V.S.A. § 4409(a)(2). Section 4409(a) specifies that municipalities may make reasonable provision for the *location* of such facilities by bylaw and, even if no such provisions are made, that the municipality may, nevertheless, regulate these facilities "with respect to size, height, bulk, yards, courts, setbacks, density of buildings, off-street parking and loading facilities and landscaping or screening."

The power of the municipality to regulate the location of public facilities is not unlimited. *Morse v. Vermont Division of State Buildings*, 136 Vt. 253, 388 A.2d 371 (1978). A municipality cannot, for example, condition the granting of a landscaping permit to the submission by the public agency to the municipality's authority to regulate the location of its facility, unless "reasonable provision" has been made in the municipal bylaws concerning such location requirements. *Id.* There is no such abuse of authority in the case at bar. In fact, the Castleton zoning regulations limit the power of the administrative officer and the board of adjustment to the specific statutory list of regulable aspects of public facilities other than location.

In determining the appropriate setback and side yard requirements to which the state facility was subject the Board of Adjustment characterized the use as nonresidential, based upon the standards found in its bylaws. It then applied side yard requirements specified in its bylaws for such nonresidential uses as though the facility were to be located in one of its nonresidential zones.

After trial below, the superior court reversed the decision of the Board of Adjustment upon a determination that the appellee's proposed use was residential. Relying upon a dictionary definition of "residential," the court below held that the appellee's use was residential because the structure would "house young people" committed to the Departments of Corrections, and Social and Rehabilitation Services. The Castleton Zoning Regulation, section 630, specifies with greater particularity than mere "housing" those uses permitted in the district where the facility is proposed. They include: "1. One family dwelling; 2. Professional residence-office; 3. School; 4. Religious institution; 5. Public outdoor recreation; 6. Enclosed accessory building use; 7. Home occupation; 8. Community

Center." Clearly, a facility which would employ a staff of ten and house, screen, detain and supervise eight or more juvenile delinquents, unless specially permitted by statute (as in the case of community care homes for six or fewer handicapped persons, 24 V.S.A. § 4409(d)), does not fit within the enumerated types of permitted uses in this residential district. The court's reliance upon a dictionary definition of "residential" without reference to the zoning regulations in this case was clearly inappropriate. The use proposed does not meet the use requirements of the Castleton R20 district where the property is located.

The Board of Adjustment was correct in its decision to apply the side yard requirements which its bylaws require in a zone in which the facility's use would be most conforming. Such an application is clearly not discriminatory, but consistent with an articulated regulatory scheme which minimizes the adverse impact of one land use upon another. 24 V.S.A. § 4302(a) (11), and is consistent with the legislative intent of 24 V.S.A. § 4409(a).

*Reversed; decision of the Board of Adjustment affirmed.*