## In re Appeal of Helen Gadhue

[ 544 A.2d 1151]

No. 85-140

Present: **Peck and Dooley, JJ., and Barney, C.J. (Ret.), Keyser, J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed December 24, 1987

Motion for Reargument Denied February 17, 1988

*Phyllis G. Severance* of *McNamara, Fitzpatrick & McCormick*, Burlington, for Plaintiff-Appellant.

*Mark L. Sperry* and *Susan M. Murray* of *Langrock Sperry Parker & Wool*, Middlebury, for Defendant-Appellee.

**Dooley, J.** Helen Gadhue, the plaintiff below, appeals from the Chittenden Superior Court's denial of her motion for a mandatory injunction to compel defendant, Norman Marcotte, to remove a structure dedicated to commercial use from his property. The structure in question was erected after defendant received an improperly issued zoning variance. Plaintiff also appeals the superior court's refusal to award her damages and attorney's fees. We affirm in part and reverse in part.

The immediate appeal brings plaintiff's cause before us for a second time in the course of a seemingly interminable litigation. When we were first faced with this matter, in 1981 (decided in 1982), the principal question was whether the defendant's variance had been properly issued by the Shelburne Zoning Board, in the first instance, and by the Chittenden Superior Court in its de novo proceeding pursuant to plaintiff's appeal of the zoning board decision. We determined that while defendant had properly received a conditional use permit, he had not satisfied the mandatory criteria for a zoning variance. Specifically, defendant had not demonstrated that "there [was] no possibility that the property [could] be developed in strict conformity with the provisions of the zoning regulation and that the authorization of a variance [was] necessary to enable the reasonable use of the property." 24 V.S.A. § 4468(a)(2). Thus, we reversed and vacated the superior court's grant of the variance. *Gadhue* v. *Marcotte*, 141 Vt. 238, 446 A.2d 375 (1982).

Our decision in *Gadhue* v. *Marcotte*, however, provided plaintiff with a hollow victory because by the time the opinion was issued, defendant's commercial structure was already in exis-

tence.[1] Consequently, plaintiff, having successfully vindicated both a private and public right, was compelled to reenter the Chittenden Superior Court to seek a mandatory injunction in order to give meaning to this Court's decision. The superior court denied plaintiff all the relief sought and awarded costs to defendant.

There are essentially two issues raised on appeal. First, did plaintiff have standing to seek a mandatory injunction? Second, what, if any, damages, costs, or litigation expenses is plaintiff entitled to receive?

Whether a mandatory injunction should issue is essentially moot. Subsequent to the instigation of the plaintiff's current action, the zoning regulations in Shelburne were amended, and, as a result, defendant's structure comports with currently existing width requirements. Thus, a mandatory injunction requiring destruction of the building would be inappropriate. However, the issue of whether plaintiff had standing to seek a mandatory injunction is of critical importance to the determination of what other relief she may be entitled to receive. More particularly, without the necessary standing to request an injunction, plaintiff is precluded from properly pursuing an alternative claim for damages or a claim for attorney's fees incurred during that phase of the litigation.

The standing issue, as framed by the parties, is whether an "interested person," as defined by 24 V.S.A. § 4464, must show special damages in order to have access to equitable remedies to abate what is essentially a public nuisance in the context of a zon-

---

[1] Defendant's variance and conditional use permit were orally approved by the Shelburne Zoning Board on August 11, 1980, and written findings were issued on September 5, 1980. Plaintiff promptly appealed to the Chittenden Superior Court and also requested the zoning board to stay enforcement of defendant's variance and conditional use permit until the appeal was resolved. Plaintiff's motion for stay was denied by the zoning board on the grounds that it lacked the authority to grant such relief. On October 24, 1980, defendant was issued a building permit, and immediately began construction. Plaintiff renewed her request for a stay with the superior court. On November 3, 1980, the court denied the stay, noting that to grant it would have been "useless" as a building permit had been issued and construction had begun. By the time the superior court issued its findings of facts and conclusions of law on the merits of plaintiff's appeal, on December 19, 1980, construction of the commercial structure was forty percent complete. The balance of construction occurred between December 19, 1980, and the summer of 1981.

ing appeal.[2] In the instant case, it is undisputed that plaintiff suffered no special damages. In fact, the trial court found that plaintiff suffered no damages at all, but, to the contrary, realized an increase in the commercial value of her property. This finding is supported by testimony of the defendant's expert witness.

Traditionally, for a private citizen to have standing to appeal a zoning board decision, compel zoning regulations to be enforced, or—beyond zoning—to enjoin an activity ostensibly harmful to the general public (i.e., a public nuisance), special damages were a prerequisite. E.g., *Thompson* v. *Smith*, 119 Vt. 488, 129 A.2d 638 (1956); see also 3 A. Rathkopf, The Law of Zoning and Planning § 43.03 (1986); D. Dobbs, Handbook on the Law of Remedies § 5.7, at 363-64 (1973). Defendant contends that the rule of *Thompson* applies to appeals brought under 24 V.S.A. §§ 4464, 4471. Plaintiff, however, argues that *Thompson* is inapplicable within the context of appeals brought pursuant to § 4464, and, thus, § 4464 controls over *Thompson* to that extent.

Defendant suggests that while § 4464 confers standing on a certain class of persons to appeal zoning board decisions, it makes no mention of the type of remedies available and falls far short of allowing plaintiff to obtain a mandatory injunction. While defendant is correct that § 4464 does not discuss available remedies, his reasoning that a mandatory injunction is unavailable to plaintiff is unpersuasive, particularly in light of our decision in *Vermont Division of State Buildings* v. *Town of Castleton Board of Adjustment*, 138 Vt. 250, 415 A.2d 188 (1980). In that case, we noted that when an appeal has been properly commenced and is pending before the superior court, "the court may grant such re-

---

[2] Although it is not raised by the parties, we note that this Court, in *Gadhue* v. *Marcotte*, reversed and vacated but did not remand for further consideration by the superior court. Thus, plaintiff's "appeal" was technically terminated when our first decision in this matter was issued. However, when plaintiff reentered superior court the matter was docketed under the same number as the original appeal, and, in all respects the superior court and the parties treated the matter as if it had continued on remand. Thus, we need not address the issue of whether plaintiff's motion for mandatory injunction was a continuation of her appeal, and therefore, fully within the automatic standing provisions of § 4464 (b)(3), or whether it was actually an original action exclusive of the original appeal and, therefore, arguably outside the umbrella of § 4464. Because of the unique standing provisions in 24 V.S.A. § 4464, this opinion is confined to zoning appeals and does not affect standing requirements of private citizens who wish to abate a public nuisance in other contexts.

lief as is otherwise within its jurisdiction and consistent with law and equity." *Id.* at 256, 415 A.2d at 192. Specifically, we stressed that the court may grant declaratory and injunctive relief. *Id.*

Thus, given the automatic standing statutorily conferred on the plaintiff and the full range of remedies available within the jurisdiction of the superior court, defendant's argument that the quality of the remedy sought by the plaintiff creates some additional burden of standing is without merit. See *id.*; see also *Garzo* v. *Stowe Board of Adjustment*, 144 Vt. 298, 302, 476 A.2d 125, 127 (1984) ("standing for review of all questions arising out of the administration of zoning laws is necessarily governed by 24 V.S.A. §§ 4464(b) . . . ."); 24 V.S.A. § 4473 ("[i]t is the purpose of [chapter 117 of Title 24] to provide for review of all questions arising out of *or with respect to* the implementation by a municipality of this chapter.") (emphasis added).

■ We thus reiterate that when an "interested person" prosecutes an appeal from a zoning board decision under 24 V.S.A. § 4464, and properly obtains review by the superior court, via 24 V.S.A. § 4471, special damages need not be shown. To hold otherwise would render meaningless the automatic standing provision of the statute. Moreover, standing requirements are determinative of who may bring an action in the first instance; they are not indicative of the quality of remedies available. Having demonstrated standing by virtue of her status as an "interested person," plaintiff has satisfied all prerequisites to relief at law or equity. See *Vermont Division of State Bldgs*, 138 Vt. at 256, 415 A.2d at 192. Thus, plaintiff's ability to request a mandatory injunction was in no way impaired by the absence of special damages. Whether or not the injunction should have issued is, as indicated earlier, a separate question.

In her action before the superior court, plaintiff also sought damages (both actual and punitive) and litigation expenses (including attorney's fees). The trial court, however, found that the fair market value of plaintiff's property (for commercial purposes) increased due to the construction of defendant's barn and that plaintiff suffered no other damages as a result of the construction. These findings are supported by credible evidence introduced at trial, and, thus, it is beyond the province of this Court to question their validity. *Central Cab, Inc.* v. *Ironside*, 126 Vt. 356, 358, 230 A.2d 790, 792 (1967) (quoting *Cody Chevrolet, Inc.* v. *Royer*, 123 Vt. 389, 392, 189 A.2d 554, 556 (1963)). Likewise, we will not

question the trial court's denial of punitive damages. There being no actual damages, punitive damages are not recoverable. *Allard v. Ford Motor Credit Co.*, 139 Vt. 162, 164, 422 A.2d 940, 942 (1980) (citations omitted). However, the question of whether certain litigation expenses are available to the plaintiff absent any showing of actual damages is properly raised for our review.

While our courts have relatively broad discretion in awarding costs in litigation, see V.R.C.P. 54, attorney's fees are considered litigation expenses—not costs—and are not as freely taxed to the opposing party by one who prevails in a particular matter. See *State* v. *Whitingham School Board*, 140 Vt. 405, 409, 438 A.2d 394, 397 (1981). Like a majority of jurisdictions in the United States, Vermont follows the "American Rule" with regard to attorney's fees. *Gramatan Home Investors Corp.* v. *Starling*, 143 Vt. 527, 535, 470 A.2d 1157, 1162 (1983). Thus, "[a]ttorney's fees under our practice are not awarded absent special legal [i.e., statutory] authority or as a matter of contract." *Myers* v. *Ambassador Ins. Co.*, 146 Vt. 552, 558, 508 A.2d 689, 692 (1986) (citations omitted). There are circumstances, however, under which we have noted exceptions to the American Rule. See *Albright* v. *Fish*, 138 Vt. 585, 591, 422 A.2d 250, 254 (1980).

In *Albright*, we acknowledged that:

> There is a substantial body of case law which holds that where the wrongful act of one person has involved another in litigation with a third person or has made it necessary for that other person to incur expenses to protect his interests, litigation expenses, including attorney's fees, are recoverable.

*Id.* (citations omitted).

Plaintiff's cause fits into the spirit—if not the facts—of *Albright*. Thus, we note that "exceptions [to the American Rule] are flexible, not absolute, and [may be] extended on [appropriate] occasion[s]." *Harkeem* v. *Adams*, 117 N.H. 687, 690, 377 A.2d 617, 619 (1977) (citations omitted). To this end, we focus on the historic powers of equity courts to award attorney's fees as the needs of justice dictate. See *Sprague* v. *Ticonic National Bank*, 307 U.S. 161, 164-66 (1939); *Wilko of Nashua, Inc.* v. *Tap Realty, Inc.*, 117 N.H. 843, 851-52, 379 A.2d 798, 804 (1977); *Harkeem*, 117 N.H. at 690, 377 A.2d at 619.

In *Sprague* v. *Ticonic National Bank,* the United States Supreme Court stressed that "[p]lainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation." *Sprague,* 307 U.S. at 166. Even so, the Court cautioned, "such allowances [by equity courts] are appropriate only in *exceptional cases and for dominating reasons of justice." Id.* at 167 (emphasis added).

The New Hampshire Supreme Court has justified an award of attorney's fees "when overriding considerations so indicate," stressing that "the award of fees lies within the [equitable] power of the court, and is an appropriate tool in the court's arsenal to do justice and vindicate rights." *Harkeem,* 117 N.H. at 690, 377 A.2d at 619 (citations omitted). That court applied the general principle to the following circumstances:

> Where an individual is forced to seek judicial assistance to secure a clearly defined and established right, which should have · been freely enjoyed without such intervention, an award of counsel fees on the basis of bad faith is appropriate. This principle, which merely shifts the cost of what should have been an unnecessary judicial proceeding to the responsible party, has long been recognized . . . in a related line of cases wherein attorneys' fees have been awarded on the basis of the courts' power to enforce their own decrees.

*Id.* at 690-91, 377 A.2d at 619 (citations omitted).

*Harkeem* v. *Adams,* like the present case, represented a situation wherein a litigant was compelled to appear twice before the state supreme court in order to obtain relief which should have been forthcoming after the first appearance. In that case, the plaintiff had been denied unemployment compensation benefits by the New Hampshire Department of Employment Security based on the Department's determination that plaintiff had lost accumulated wage credits because of his voluntary termination from his job. When the plaintiff prevailed before the New Hampshire Supreme Court the Department again denied benefits but for other reasons. When, after a second round of litigation, the defendant ultimately prevailed, the court awarded attorney's fees to the plaintiff, stressing that:

[V]ictory was hard won by [the plaintiff], for the diligence of the defendant compelled him to pursue his claim through every available legal channel before he obtained vindication. However, instead of ceding to him the fruits of his victory, the department . . . sought to subject him to further litigation by raising new arguments before the superior court.

*Id.* at 691-92, 377 A.2d at 619-20.

This is not unlike the present case. While Mr. Marcotte did not interject new legal defenses into the matter, his actions, in fact, prolonged the litigation by denying plaintiff the fruits of her initial victory. The question that must be determined, then, is whether such actions are sufficient—under the narrow circumstances of this case—to justify an award of attorney's fees.

The *Harkeem* court discussed at length certain conduct that would justify an award of attorney's fees:

> Bad faith conduct held to justify the award of counsel fees has been found where one party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons" where the litigant's conduct can be characterized as unreasonably obdurate or obstinate, and where it should have been unnecessary for the successful party to have brought the action.

*Id.* at 690-91, 377 A.2d at 619 (citations omitted).

In the instant case, by building his commercial structure at a time when it was offensive to local zoning regulations and when the validity of his variance was being actively challenged, defendant brought himself into equity jurisdiction by effectively compelling plaintiff to seek a mandatory injunction as her only way to give meaning to her victory in this Court. Defendant cannot now be heard to argue against this Court providing plaintiff with the equitable remedy of attorney's fees.

While, certainly, there is no suggestion that plaintiff would be entitled to litigation expenses incurred during her initial appeal which culminated with this Court's decision in *Gadhue* v. *Marcotte*, the exception to the American Rule takes form during the second round of litigation in this case. Due to the acts of the defendant, plaintiff was drawn into litigation beyond the point that should have been the natural culmination of her appeal. In other words, by statute, she had a legal right along with the means to protect that right and to that end she prosecuted her

appeal. Under normal circumstances, the resolution of the issue on appeal (i.e., the first appeal) would have been sufficient to vindicate the right impaired by the decision of the zoning board. However, in this case, defendant, while fully cognizant of the fact that he was involved in a live legal controversy over the validity of his variance, acted in total disregard of the proceedings against him and built his commercial structure. In fact, defendant acknowledged, during the proceedings below, that he was aware that he acted at his own peril, but completed construction anyway.

Had defendant allowed the dispute over the legality of the variance to be settled through the mechanism established by the legislature in chapter 117 of Title 24, it would not have been necessary for plaintiff to proceed further—beyond what should have been the natural culmination of her appeal—in order to protect both her statutorily created rights and the rights of the public at large. Thus, factually, defendant's actions caused plaintiff to incur additional litigation expenses in order to protect her interests. See *Harkeem*, 117 N.H. at 691-92, 377 A.2d at 619-20; cf. *Albright*, 138 Vt. at 591, 422 A.2d at 254. Because plaintiff was drawn into the continuing aspect of the litigation in this manner, her case fairly calls on the equitable powers of this Court to note a specific exception to the American Rule for attorney's fees. Thus, plaintiff may recover reasonable attorney's fees which were incurred in this matter subsequent to our decision in *Gadhue* v. *Marcotte*. See *Harkeem*, 117 N.H. at 691-92, 377 A.2d at 619-20; cf. *Albright*, 138 Vt. at 591, 422 A.2d at 254; *Barclay* v. *Dublin Lake Club*, 89 N.H. 500, 506, 1 A.2d 633, 636-37 (1938) (reasonable attorney's fees awarded to plaintiff who was compelled to proceed before supreme court twice rather than once). We again observe with caution that "such allowances are appropriate only in exceptional cases and for dominating reasons of justice," *Sprague*, 307 U.S. at 167, as is the case here.

As previously noted, the trial court awarded costs to defendant; however, in light of our disposition of this matter, we reverse on that point and award costs in both the trial court and in this Court to plaintiff, pursuant to V.R.A.P. 39(a).

*The judgment of the superior court in regard to plaintiff's attorney's fees and the award of costs to defendant is reversed; in all other respects the judgment is affirmed. The cause is re-*

*manded to the superior court with instructions to hear and determine reasonable attorney's fees incurred by the plaintiff subsequent to April 23, 1982. Costs to plaintiff.*