STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeals of David Jackson } Docket Nos. 165-9-99 Vtec, 43-2-00 Vtec, and 190-9-00 Vtec

In re: Appeal Gerald and Patricia McCue } Docket No. 258-12-99 Vtec

Decision and Order

This Decision and Order addresses four related appeals in Environmental Court. Because the parties' roles vary in the different appeals, we will refer to them by name. David and Gloria Jackson are represented by John D. Hansen, Esq.; Gerald and Patricia McCue are represented by E. Patrick Burke, Esq.; Interested Person Agnes Earls has appeared and represents herself; and the Town is represented by John S. Liccardi, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law; all but Ms. Earls did so. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

David and Gloria Jackson own a preexisting lot, 50 feet wide and 165 feet deep, on the easterly shore of Lake Bomoseen, on which were located two preexisting residential camps, one closer to the lake, and the other very close to the road. The property is in the R40 zoning district, in which the maximum height of a structure is 35 feet (or three stories, whichever is less). This decision will refer to the preexisting structure closer to the road as " the old cottage;" the other structure is not at issue in this case. The Jackson lot slopes steeply downwards from the road towards the lake. The present litigation involves the Jacksons' construction of a new residential structure to replace the old cottage. Gerald and Patricia McCue own the adjoining property to the north, and Agnes Earls owns the adjoining property to the south.

The old cottage was a 1½ -story structure oriented with the ridgeline of its roof parallel to the road. It had a dormer entrance built out and up from the roof, facing towards the road. The roof was equipped with gutters that conducted rainwater to the setback facing the McCue property. Most of the structure was located close to and below the grade of the road. The rear wall of the

old cottage was a few inches from the retaining wall holding the roadbed. The Jacksons experienced serious drainage problems, as drainage from the road ran down the retaining wall and caused the rear wall of the old cottage to deteriorate. From time to time, when a culvert draining to the lake was blocked, water would run across the road and into the front door of the old cottage into the lower residential rooms of the cottage. Work done on the grade of the road by the Town may have caused additional drainage problems both for the Jacksons' and for the McCues' properties; the road drainage problems have recently been corrected or improved by the Town.

To remedy the drainage problems, and because the rear wall of the old cottage had rotted out, the Jacksons decided to demolish the old cottage and to apply to build a new cottage structure a little farther from the roadside retaining wall. David Jackson initially applied for the permit on December 17, 1997, through a local agent and contractor, Frank Taggart.

The 1997 application stated that the structural changes proposed were to construct a new building three feet closer to the lake than the old one. The application showed a footprint of the old cottage and the proposed new building, but did not show any elevations of the proposed building, which at the time of application was not yet designed. The structure was proposed to use the existing sewage system and not to increase the capacity (sewage demand) of that system. Nothing appears on the application to show whether the roof orientation was intended to remain parallel to the road or be changed to be perpendicular to the road.

The 1997 application proposed that the size of the structure would be 30 feet in length, 21 feet in width, 16 feet in height[1], and 1 story. Of the four choices to check regarding the type of foundation (full cellar, crawl [space], slab, or partial cellar), the application has " full cellar" checked.

The zoning administrator referred the application to the ZBA for action under § 400-1 of the Zoning Ordinance, as the lot was nonconforming. The ZBA approved the application on February 8, 1998, with the single condition that " the home will be a maximum of 26' from the lowest point of the building to the highest point of the building." Thus, the application that was approved was for a structure that would be 16 feet high measured from the finished grade at the front of the building (that is, facing the road) to the highest point of the roof, constructed over a full cellar; it was approved with the additional limitation that the building measure no more than 26 feet from its lowest to its highest point. The permit did not specify the orientation of the roof ridgeline. No party appealed the permit and it became final.

Mr. Jackson chose the company North Woods Joinery to design and build the new building. Although the permit condition by its terms limited the structure to a " maximum of 26' from the lowest point of the building to the highest point of the building," Mr. Jackson and the builders incorrectly interpreted this condition to have granted them an additional ten feet of height not requested in the application, rather than understanding that it limited the " full cellar" under the building to ten feet in height, and that the height at the front of the building remained limited by their application to 16 feet. In fact, they designed the new building to measure just under 26 feet from the top of the foundation, which was at grade level on the road or front side of the building, but which was designed to be living space with widows on the lower side of the building facing

towards the lake. The roof orientation was changed so that the ridgeline runs perpendicular to the road.

Construction on the building began in the spring of 1999. As built, the structure measures just under 34 feet from the finished grade at the lake side of the building to the highest point of the roof. On the lake side of the building, the structure consists of a 7'11" foundation with windows, above which is constructed an additional 1½ stories of house, so that from the road side the structure is just under 26 feet high and just over 30 feet wide, appearing to be a 1½ story building, while from the lake side the structure is just under 34 feet high and appears from the outside to be a 2½ story building. The side setback on the McCue side is only six feet, with a 14 foot side setback on the Earls side. Because of the change in roof orientation, snow and rain run off the roof close to the McCue property line, and snow accumulates in the space between the new structure and the McCues' camp. Runoff when the snow melts runs onto the McCue property, but we cannot find that the runoff is greater than it was when the ridgeline was oriented parallel to the road.

In the summer of 1999, at the time that the roof of the new building was being finished, the Zoning Administrator came to the site to investigate a complaint regarding the height of the new building. She did not order the workers to stop work. Rather, she contacted Mr. Jackson by telephone and arranged for the ZBA to ' clarify' the requirements of the unappealed permit. This inquiry resulted in a letter dated August 8, 1999[2], signed by five members of the ZBA, stating in full:

The Zoning Board of Adjustment has reviewed your inquiry concerning permit #4936, specifically the question of height of the building. The Findings of Fact clearly state the height of the building and the permit stands as applied for and approved.

David Jackson's appeal of that ZBA action is Docket No. 165-9-99 Vtec.

On September 2, 1999, the Zoning Administrator issued a Notice of Violation, stating as " a violation of the Town of Castleton Zoning Ordinance" that " the height of the newly-constructed building exceeds the bounds of [the] approved permit." It required the Jacksons to correct the violation by " reconstructing" the building to be no more than 26 feet high, measured from the lowest point of the building. The Jacksons appealed to the ZBA, which upheld the Notice of Violation in a November 22, 1999 decision. Gerald and Patricia McCue appealed from that decision in Docket No. 258-12-99 Vtec, seeking enforcement relief and additions to the Notice of Violation, and David and Gloria Jackson cross-appealed. The Court issued a preliminary ruling that this appeal is limited to the September 1999 Notice of Violation and whether it should be upheld, amended or reversed in any way.

The Jacksons applied in November of 1999 for approval of the building as built, showing the proposed height of the building as 26 feet and the number of stories as " 2," with the structural changes described as a " 26' high structure on top of 8' basement." The 1999 application included all four building elevations as well as the footprint plan. It was referred to the ZBA, which denied it on January 24, 2000. The Jacksons appealed that denial to this Court in Docket No. 43-2-00 Vtec. It is before the Court on the merits of the application, de novo.

On June 5, 2000, the Zoning Administrator issued another Notice of Violation, incorporating the height violation as stated in the September 1999 Notice of Violation and citing the following four additional violations: 1) construction of a three-story structure when the application was for a one-story structure; 2) changing the configuration of the roof and modifying the drainage so as to create an adverse effect on the neighbors; 3) increasing the living area and allowable floor space in excess of the permit; and 4) the addition of retaining walls ' contributing to' the other violations. In Docket No. 190-9-00 Vtec, David and Gloria Jackson appealed from the ZBA' s August 10, 2000 decision upholding the June 2000 Supplemental Notice of Violation.

Appeal of the August 1999 ' Clarification' Ruling

The Court appreciates that the Zoning Administrator initially had hoped to resolve this matter cooperatively between Appellant' s interpretation and her own interpretation of the height limit in the February 1999 permit, by asking the ZBA to verify what it had intended by that permit. However, Appellant Jackson is correct that there was no basis in the Castleton Zoning Ordinance or in the state zoning statute, 24 V.S.A. Chapter 117, for the Zoning Administrator (or anyone else) to request a ' clarification' ruling from a Zoning Board of Adjustment. Once the ZBA issued its permit and that permit was not appealed and became final, it could not be challenged or amended by any further direct approach to the ZBA or any collateral attack. Rather, the route of bringing any such inquiry before the ZBA would have been for the Zoning Administrator to issue a Notice of Violation, or a ruling that no enforcement action would be taken, so that the party who disagreed with the ruling could appeal it to the ZBA and hence this Court.

Appellant Jackson also requests that the Court award him the costs of having taken the appeal from this unauthorized action of the ZBA. Absent a statutory or contractual provision for the award of attorney' s fees and costs, or a finding of bad faith sufficient to create an exception to the American Rule, the parties must bear their own costs of litigation. In re Appeal of Gadhue, 149 Vt. 322, 327-28(1987). Accordingly, judgment will be entered in favor of Appellant Jackson in Docket No. 165-9-99 Vtec, that the August 1999 ' clarification' letter from the ZBA was of no force or effect, with all parties to bear their own respective costs.

Appeals of the Notices of Violation

The Jacksons argue that the building as built did not violate the Zoning Ordinance, because it does not exceed either the 35-foot height or the three-story limit allowed in the ordinance. The 1999 Notice of Violation clearly stated as the violation that the height of the newly-constructed building violated the permit limitation. It is axiomatic that failure to comply with a permit limitation is a violation of the underlying ordinance or statute which requires the permit to be obtained authorizing the construction. Cf. § 810.9 ( a permit may be revoked for violation of its conditions). Accordingly, judgment will be entered in Docket No. 258-12-99 Vtec upholding the September 1999 Notice of Violation. The building was constructed in violation of the height limitation stated in the 1998 permit, even though it does not exceed the height limitation in the ordinance.

The June 2000 Notice of Violation stated five specific violations by which the building as built does not conform to the 1998 permit or its application, the second of which repeats the 1999

Notice of Violation regarding the building height and has been addressed above. We take the remaining four in turn.

The June 2000 Notice of Violation states as a violation the construction of a three-story structure when the application was for a one-story structure. Unlike the zoning regulations in some towns, the term 'story' is not defined. The term 'basement' is defined, and requires that all four walls be within the ground. The implication of this definition is that a so-called walk-out basement would be treated as a building 'story,' but it is not explicitly stated. However, the application form does not provide for a walk-out basement as a type of foundation, and asks for the number of stories as contrasted with the cellar type. If the basement is treated as a 'story,' then the violation would have been the construction of a two-story structure when only one story was stated in the application. The regulations and the application form also do not state whether the space within the peak of the roof, commonly known as an attic, is treated as a 'story,' as half of a 'story,' or is not counted at all, or whether it makes a difference to the calculation if that space is to be left open to the first floor space or to contain the half-floor commonly known as a loft. Both the regulations and the application form are ambiguous as to how to count a 'story,' and we must interpret ambiguities to favor the landowner. Accordingly, judgment will be entered in favor of Appellants Jackson on this asserted violation.

The June 2000 Notice of Violation states as a violation the change in the orientation of the roof and modification of the drainage so as to create an adverse effect on the neighbors. Nothing in the 1998 permit required Appellants to leave the roof orientation of the new structure parallel to the road. The 1998 permit restricted the footprint to 21' x 30' (630 square feet) and showed the location of the building footprint relative to the existing structure and the side and front setbacks. Therefore, changing the orientation of the ridgeline did not violate the permit or the Zoning Ordinance. The changed roof orientation does not increase the drainage of rain onto the McCue property, as it is evident from the dripline of the roof shown in a photograph in evidence that rain coming off the roof falls within the six-foot setback. Snow sliding off the roof may well fall onto and build up within the setback close to the McCue property, but there was no evidence that the melting of that snow in years of heavy snowfall would cause an increase in water drainage on the McCue property, compared with the prior drainage patterns. In any event, even if there were increased drainage or snow melt that could implicate the private rights of the adjoining landowners, that fact would not violate any of the conditions of the 1998 permit. Nor did the parties cite nor could the Court find any provision of the Zoning Ordinance violated by the change in roof orientation or even an increase in drainage. See, e.g., § 760: Performance Standards. Accordingly, judgment will be entered in favor of Appellants Jackson on this asserted violation.

The June 2000 Notice of Violation states as a violation the increase in the living area and allowable floor space in excess of the permit. The 1998 permit restricted the footprint to 21' x 30' (630 square feet) and showed the location of the building footprint relative to the existing structure and the side and front setbacks. Section 400(1)(c) regulates the footprint of the building, not its total floor space. The 1998 permit also did not regulate either the living area or the allowable floor space. The fact that the building is using the existing septic system may limit the number of bedrooms or toilets, as the permit stated that there would be no increase in 'capacity,' that is, in demand on the septic system. However, the evidence shows no violation of

the permit regarding the living area or floor space. Accordingly, judgment will be entered in favor of Appellants Jackson on this asserted violation.

The June 2000 Notice of Violation states as a violation the addition of retaining walls ' contributing to' the other violations. Nothing in the 1998 permit or the Zoning Ordinance prohibited the retaining walls. In fact, the brief ' discussion' section in the February 10, 1998 ZBA, stated that " [c]urrently the home is very close to the road and moving it would allow Mr. Jackson to put in a concrete foundation and retaining wall." This discussion, if anything, suggests that the retaining walls were contemplated in the 1998 permit. Accordingly, judgment will be entered in favor of Appellants Jackson on this asserted violation.

Appeal of the As-Built Application

Because of the way in which the history of this case has evolved, it is important to note that Docket No. 43-2-00 Vtec, the Jacksons' application for approval of the building as-built, must be decided according to whether it meets the standards in § 400(1) of the Zoning Ordinance, without regard to whether it was or was not built in fact in violation of the 1998 permit. That is, it should be approved if it meets the standards for reconstruction or enlargement of a nonconforming building, and should not be approved if it fails to meet those standards. The violation of the original permit might have supported an action to revoke that permit, under § 810.9, but there is no statutory or ordinance support for denying an as-built application due to the fact that it was built in violation. Compare 10 V.S.A. § 8011.

The Town argues that it is actually an impermissible second successive application. The ZBA was, of course, entitled to decline to consider the application as a second successive application, in which case the Court would have reached the question of whether the disputed height was a changed circumstance justifying the second application. But the ZBA did not decline to consider the application on its merits, and in the Court' s view the dispute over the height, and the issuance of the notices of violation, are sufficiently changed circumstances to justify consideration of this new or amended application. As in In re Appeal of Newton Enterprises, 167 Vt. 459 (1998), the Jacksons cannot now challenge the unappealed 1998 permit, but they are entitled to make a new application to bring their house into compliance.

The standards applicable to this application, § 400(1), are that the proposal has no adverse effect upon the traffic in the vicinity, that the proposal has no adverse effect upon surrounding property, and that the proposal is not an increase in the gross area of more than 50% of the total ground area covered by the building on the date of the adoption of the ordinance or amendment that made it non-conforming.

The proposal will have no adverse effect upon the traffic in the vicinity, as it will not increase anything about the traffic generated by the building. If anything, it will improve the traffic flow in the vicinity, as moving the building away from the road will allow the parking area to be increased to more effectively keep the cars associated with this lot from obstructing or protruding into the road.

By the Court's calculations from the evidence, the proposal is not an increase in the gross area of more than 50% of the total ground area covered by the old building. We note that this is a footprint calculation (ground area coverage) and not a calculation of floor area or liveable space within the building. From the diagram provided on the back of the application, the elevation drawings, and the photographs of the building as built (and comparing the diagram on the back of the application for the 1998 permit), it appears that the existing building had a footprint of 600 square feet of enclosed building, plus 200 square feet of porch, for a total of 800 square feet of ground area coverage. The proposal has a footprint of 630 square feet of enclosed building, plus from 200 square feet to as much as 366 square feet of porch, depending upon whether the diagram on the back of the application is relied on, or the elevations attached to the application. Even using the maximum calculation, the proposal represents at most a total of 996 square feet, which is far less than the 1200 square feet that would be allowed under § 400(1)(c).

The final determination, whether the proposal will have an adverse effect on neighboring properties, is not equivalent to the conditional use determination of whether a proposal will adversely affect the character of a neighborhood; it is a narrower consideration of the effect on the specific neighboring properties. Although the proposed building is undoubtedly much taller than the building it replaced, it is only disproportionately tall in comparison with garages at the edge of the road, and in comparison with the unusually low building which it replaced. It is not large in its footprint, and is not either taller or larger in apparent size or real size than other nearby houses, including the McCues' house. When viewed from the lake, it blends in with the neighboring houses and is partially masked by the other house on the same lot. While the Court can understand that Ms. Earls and the McCues would prefer to look out laterally from their properties to a lower structure, the house does not block either view towards the lake and has not been shown to be so aesthetically unpleasant as to adversely affect either neighboring property. Further, although the standard in § 400(1) does not explicitly call for an analysis of the effect of a proposal on the monetary value of neighboring properties, it was apparent from Mr. McCue's testimony that the monetary value of his property was not affected by the as-built height of this house, as Mr. McCue had received an offer for his property at the listed price within a few days of its listing.

Based on the foregoing, it is hereby ORDERED and ADJUDGED as follows in each of the above-captioned cases.

In Docket No. 165-9-99 Vtec, judgment is entered in favor of Appellants David and Gloria Jackson, as the ZBA had no jurisdiction to 'clarify' an unappealed permit.

In Docket No. 258-12-99 Vtec, judgment is entered in part in favor of the Town and of Appellants McCue, in that the 1999 Notice of Violation is upheld. However, judgment is entered in part in favor of Cross-Appellants Jackson, in that the McCues' requests for enforcement relief are denied as they are beyond the jurisdiction of this court, and in that the McCues' requests to add violations to the Notice of Violation are denied for the reasons stated with regard to the 2000 Notice of Violation.

In Docket No. 190-9-00 Vtec, judgment is entered in favor of the Town and of Appellants McCue upholding the 2000 Notice of Violation as to the height violation only (repeated from the

1999 Notice of Violation adjudicated in Docket No. 258-12-99 Vtec). Otherwise, judgment is entered in favor of Appellants Jackson on the other asserted violations in the 2000 Notice of Violation.

In Docket No. 43-2-00 Vtec, judgment is entered in favor of Appellants David and Gloria Jackson. Their application for approval of the house as built is GRANTED, as it meets the standards for approval in § 400(1) of the Zoning Ordinance.

We note that, if the Town wishes to bring any enforcement action for the building of the house in violation of the 1998 permit, covering the period between its construction and the application for the as-built permit, such action would have to be filed as a new case, commenced by summons and complaint like any other civil action. 24 V.S.A. § § 4444, 4445 and 4470(c).

Dated at Barre, Vermont, this 8th day of June, 2001.

_____

Merideth Wright
Environmental Judge

## Footnotes

[1.] "Building height" is defined in the Zoning Ordinance as "the vertical distance measured from the proposed finished grade at the front of the building to the highest point of the roof." (Emphasis added).

[2.] Not submitted in evidence but attached by Appellants Jackson to their Notice of Appeal.