Chesery v. Zeno, No. 1268-03 Cncv (Katz, J., Mar. 8, 2004)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT                                  SUPERIOR COURT
Chittenden County, ss.:                           Docket No. 1268-03 CnCv


ALECIA CHESERY

v.

NEIL ZENO and
APM, INC.


FINDINGS OF FACT
CONCLUSIONS OF LAW AND
NOTICE OF DECISION


        This matter was tried to the court on February 17, 2004.  On the basis of the evidence presented, the following decision is announced.

# FINDINGS OF FACT

1. Plaintiff Chesery owned a house in Colchester, which required a good deal of work—carpentry, painting, siding, pruning, yard work, snow plowing, drainage. She hired defendant Zeno and his company, Arrowhead Property Maintenance, to do all kinds of work, over a long period of time. Something of a friendship ensued.

2. Growing out of this relationship, Zeno several times asked Chesery to make large purchases for him, as he had no credit but desired expensive things. On this basis, she purchased a 40 inch television with associated equipment for $5,342 and very expensive stereo equipment for $5,053, both from The Superstore in Williston. Zeno was to make payments on all these purchases. He never made one. She eventually rolled the debt over onto a credit card, which she is still paying.

3. On a similar basis, Chesery purchased a $9,459 commercial lawnmower from Hertz Equipment. Again, Zeno was to make the payments. This time he made one for $150.

4. Chesery commenced suit against Zeno on October 17, 2003. Much of the trial consisted of Zeno's claimed setoff, that he did work for Chesery for which he was not paid.

5. Beginning in 1994, Chesery made regular payments to Zeno for work that he had done or was about to do. Chesery submitted an accounting of these payments extending to June 2003. Out of about 250 payments Chesery claims eighteen were made for work that was never

done. These payments total to $9,976. Counting only payments made after October 17, 1997, however, creates a total of $5,464. In addition, Chesery claims that she paid $2,300 to another contractor to finish siding her house, a job that Zeno had been paid for and never completed.

6.      The setoff evidence focused on yard work in 2002, in which Zeno took down a number of quite large trees in her backyard, cut them up, split and stacked them. There is no dispute that he did this work. There was quite a dispute in the evidence as to how long he worked at it. Chesery's recollection, although vague, was that he spent a total of about two weeks doing it, stretched over perhaps a month.

Zeno's recollection was totally different. He appeared at trial with "time sheets," which he testified were "written daily in the cab of his truck." These time sheets struck the court as queer, because they consisted of very neat, photocopied sheets. One would expect time sheets, written daily, on the job site, in the cab of a pick-up truck to be anything but. So the court requested the original. After looking, Zeno found the original, but it possessed the same qualities as the photocopy, it did not look like contemporaneous daily entries. Despite a healthy dose of dissembling about "straight off the computer," Zeno eventually admitted "Can't say this is the original time sheet made in truck. Not my writing. Written by my wife, Candy Fay."

According to these daily "time sheets," Zeno performed the tree work involving a hydraulic boom on September 27, 28, and 29, 2002. A little farther along, however, the evidence revealed that Zeno rented the hydraulic lift for this work on September 13, 2002. It was delivered the same day, and Zeno admitted having been notified of its delivery.

Reviewing the "time sheets," however, revealed that from September 13, the date of delivery of this expensive piece of rental equipment, Zeno was not on the job for a full two weeks until the 27th. It makes no sense at all that Zeno would have rented this expensive equipment and left it idle for a two full weeks after delivery. Indeed, the payment amount of $373.80 on the rental receipt suggests it was rented for only a brief period. The more persuasive conclusion is that the time sheet documents are bogus. They were prepared after the fact, possibly just for trial, and are entitled to no evidentiary weight. It is undisputed that Zeno did clear the yard of trees but also that he never submitted a bill for this work. Why would he have put effort into daily time sheets, and then never billed? The answer is that he never made "daily" time sheets. The time sheets constitute a significant exaggeration of Zeno's time on the yard clearing project. This conclusion is also fully congruent with Zeno's other, more recent dealings with the plaintiff.

The court is therefore wholly unpersuaded of Zeno's $6,931 setoff for yard clearing. Two weeks, 80 hours, at the agreed rate of $36, is supported by plaintiff's testimony, so that is the setoff we shall apply for that work—$2,880.

7. Chesery has made $6,992 in personal loans to Zeno, none of which have been fully repaid.

8. Zeno has made a total of $1,943 in payments to Chesery, one payment of $150 on the lawnmower, and is entitled to a credit of $2,880 for the yard work, a total credit of $4,973.

9. Chesery has sold the large television and some of the stereo

equipment on E-Bay, which we find a reasonable method of disposing of the items, for which she received $2,810. The remaining stereo equipment has not been sold. The best evidence at trial is that plaintiff will probably net $500 from its sale.

10. Chesery still possesses the commercial lawnmower, which is listed for sale with a local merchant in such goods. Apparently, plaintiff has something in the nature of a consignment relationship with that merchant. The best evidence at trial is that plaintiff will probably net $5,000 from its sale.

## CONCLUSIONS OF LAW

11. Although a party may testify falsely, or otherwise present false evidence, the court is still required to make findings based upon the preponderance of evidence. Mills v. Mills, 167 Vt. 567, 567–68 (1997) ("The trial court has wide discretion to assess the credibility of witnesses and to weigh the evidence before it . . ."); Lynda Lee Fashons, Inc. v. Sharp Offset Printing, Inc., 134 Vt. 167, 170 (1976) ("The trial court is bound to make findings of fact upon all material issues raised by the pleadings and evidence."). In a civil case, the court does not punish a party for false evidence, although distrust of that party's other evidence may diminish recovery. Cf. State v. LaCourse, 168 Vt. 162, 163–64 (1998) (punishing false statements "under oath" in a criminal context).

12. Under the statute of limitations, Chesery's claims against Zeno are limited to claims that arose within the six year period preceding her complaint of October 17, 2003. 12 V.S.A. §§ 466, 511. While the bulk of

her claims easily fall within this period, the ten individual overpayments prior to October 17, 1997 have expired. 12 V.S.A. § 511. Chesery can still recover on the last eight payments she made to Zeno for work he did not do.

13. Based on Chesery's testimony and evidence, we are persuaded that Zeno breached his agreements with Chesery concerning the yard work, siding, and repayments for loans, the lawnmower, the stereo, its equipment, and televisions. As a result, Chesery is entitled to the following from Zeno:

> $2,300— Siding Work
> $5,342— Television and equipment
> $5,053— Stereo and equipment
> $9,459— Lawnmower
> $5,464— Payments for work not done since October 1997
> $6,992— Loans
>
> $34,610— Subtotal

See McGee Construction v. Neshobe Development, 156 Vt. 550, 557 (1991) (citing to Restatement (Second) of Contracts § 347). Zeno is entitled to the following credits for payments, work completed, and mitigation. Estate of Sawyer v. Crowell, 151 Vt. 287, 294 (1989) (discussing the duty to mitigate under general contract law).

> $4,973— Credit for work and payments
> $5,000— Current Value of Lawnmower
> $2,810— Value of electronics sold on ebay

$500— Value of remaining stereo equipment

$13,283— Subtotal

Thus Zeno's liability is the amount owed, $34,610, minus the setoff credit, $13,283, which creates an adjusted balance of $21,327. We conclude that Chesery is due this amount from Zeno for his failure to repay loans and perform work for which he had been paid.

14.     Chesery initially sought attorney's fees under the provisions of the Vermont Consumer Protection Act, 9 V.S.A. § 2461(b) for defendant's alleged violations of the Attorney General's Rules for Debt Collection. Atty. Gen. R. CF104 (adopted pursuant to 9 V.S.A. § 2453 (c)). At trial, Chesery presented no evidence proving a violation of § 2453. Instead, her evidence and testimony went to the amount of work Zeno had done for her and how much he still owed her. Under the American Rule, parties pay their own attorney's fees. L'Esperance v. Benware, 2003 Vt. 43, ¶ 21. While the Consumer Fraud Act does award mandatory attorney's fees, it requires a finding of fraud in violation of the act. Id. In this case, Zeno and Chesery had an on-going contractual relationship. In essence, Chesery agreed to use her credit to purchase items for Zeno who in return promised to repay her or perform yard work. When Chesery attempted to collect on these obligations, Zeno's modus operandi appears to have been a mixture of huffing and puffing. This is evinced by his various counterclaims which have varied the setoff amount between $20,000 and $7,000. Still, Chesery failed to show that Zeno's attempts to assert his setoffs violated the Rules against unconscionable, threatening, or deceptive debt collecting. Cf. Atty. Gen. R. CF104 (outlawing misleading debt collection practices).

15.     Chesery's claim for attorney's fees are likewise lacking under the discretionary power to award fees against parties in "bad faith." In re Gadhue, 149 Vt. 322, 326 (1987). Gadhue represents a line of cases that allow attorney's fees as part of the award based on the equitable power of

the court when there has been significant wrong-doing by one party, which has forced the other into extensive litigation.  Id. at 327–28; see also Albright v. Fish, 138 Vt. 585, 591 (1980) (declining to award attorney's fees for breach of restrictive covenant).  In this case, Chesery has not faced extensive litigation to clarify her rights and damages under dispute.  Cf. Gadhue, 149 Vt. at 328 (awarding attorney's fees only after defendant's actions forced plaintiff to return to court to enforce her previously declared rights).  While Chesery has substantially prevailed in her claims, she has not prevailed entirely.  Her claims as well as Zeno's have been adjusted to reflect the evidence presented and the applicable law.  While Zeno has demonstrated a propensity against truth, he has not acted to completely blot out Chesery's rights or forced her through prolonged litigation to establish them.  This decision reflects less of an assertion of rights and more of a clarification between the two parties and as such must exclude any deviation from the American Rule.

Based on the foregoing, plaintiff Chesery is awarded a judgment of $21,327 against defendant Zeno.

Dated at Burlington, Vermont, _____, 2004.

_____
Judge