2013 VT 24

## In re INVESTIGATION INTO GENERAL ORDER NO. 45

[67 A.3d 285]

No. 12-448

¶ 1. March 25, 2013. New England Coalition, Inc. (NEC) filed a complaint in this Court pursuant to 30 V.S.A. § 15 seeking injunctive relief. Specifically, it asked this Court to enjoin Entergy Nuclear Vermont Yankee, LLC, and Entergy Nuclear Operations, Inc. (Entergy) from continuing to operate the Vermont Yankee Nuclear Power Plant. NEC alleged that Entergy was operating in violation of the Public Service Board's final order approving the 2002 sale of the power plant to Entergy (Sale Order) in Docket No. 6545. There are no grounds to grant equitable relief, and NEC's complaint is therefore dismissed.

¶ 2. By statute, a "party to an order or decree of the public service board or the board itself, or both, may complain to the supreme court for relief against any disobedience of or noncompliance with such order or decree." 30 V.S.A. § 15. In response to such complaint, the Court may "make such order and decree in the premises by way of writ of mandamus, writ of prohibition, injunction, or otherwise, concerning the enforcement of such order and decree of the public service board as to law and equity shall appertain." *Id.* Such extraordinary relief is left to this Court's discretion. See, e.g., *Okemo Mountain, Inc. v. Town of Ludlow*, 127 Vt. 354, 356, 249 A.2d 401, 403 (1968) (confirming that an application for mandamus is addressed to the sound discretion of the Supreme Court); *In re Raymo*, 121 Vt. 246, 249, 154 A.2d 487, 489 (1959) (noting that issuance of a writ of prohibition is a matter within the Court's discretion).

¶ 3. Some of the pertinent events leading to this complaint are summarized as follows. In 2006, following the Sale Order, Act 160 came into effect, ostensibly requiring state legislative approval before the Board could renew the Certificate of Public Good (CPG) authorizing continued operation of the Vermont Yankee plant past its scheduled expiration date of March 21, 2012. See 2005, No. 160 (Adj. Sess.). In 2008, Entergy applied to the Board to renew or amend its CPG, a proceeding now pending and underway. Entergy filed a motion for a declaratory ruling with the Board in March 2012, asking the Board to order, among other things, that Entergy could continue operating Vermont Yankee while its petition for a new or amended CPG remained pending. In a March 2012 order, the

Board agreed that because Entergy had applied for a new or renewed CPG, and the application had not yet been finally determined, Entergy's current CPG was extended pursuant to 3 V.S.A. § 814(b).

¶ 4. The Board reached a contrary conclusion, however, with respect to the 2002 Sale Order that had approved the sale of Vermont Yankee to Entergy. Condition 8 of that order prohibited Entergy from operating Vermont Yankee after March 21, 2012 absent "issuance" of a new or renewed CPG. The Board concluded that this condition was a requirement of the order approving the sale of Vermont Yankee to Entergy, and not part of the licensure of a continuing activity, and thus, 3 V.S.A. § 814(b) did not apply. Absent modification of the Sale Order, the Board stated that the continued operation of Vermont Yankee after March 21, 2012 without a new or renewed CPG would violate the condition of that sale.

¶ 5. In the meantime, Entergy obtained an injunction from the United States District Court for Vermont against enforcement of the state legislative approval law based on federal preemption under the Atomic Energy Act, 42 U.S.C. § 2011 et seq. See *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 838 F. Supp. 2d 183 (D. Vt. 2012). The injunction prohibited the Board from "bringing an enforcement action, or taking other action, to compel Vermont Yankee to shut down after March 21, 2012 because it failed to obtain legislative approval . . . for continued operation." *Id.* at 243. Responding to Entergy's declaratory judgment action, the Board indicated that it was not issuing an order directing Entergy to cease operations, but rather, it was responding to Entergy's request for a declaratory ruling. Entergy then moved to amend the Condition 8 deadline in the Sale Order under Vermont Rule of Civil Procedure 60(b), contending, essentially, that the legislative interjection into the licensing process was an unforeseen circumstance

justifying modification of the deadline provision. The Board denied the motion in November 2012.

¶ 6. In the instant complaint, NEC asserts that the Board correctly found that 3 V.S.A. § 814(b) does not excuse Entergy from complying with Condition 8 of the Sale Order. Based on this assertion, it asks this Court to enforce the terms of the Sale Order and the terms of a Memorandum of Understanding (MOU) incorporated therein. NEC seeks to enjoin Entergy from continuing to operate Vermont Yankee until the Board has rendered a decision on Entergy's application for a new or amended CPG.

¶ 7. As we have recognized, "[a]n injunction is an extraordinary remedy and will not be granted routinely unless the right to relief is clear." *Vt. Div. of State Bldgs. v. Town of Castleton Bd. of Adjustment*, 138 Vt. 250, 256, 415 A.2d 188, 193 (1980); see also 11A C. Wright, et al., Federal Practice and Procedure § 2942, at 43 (2d ed. 1995) ("Since an injunction is regarded as an extraordinary remedy, it is not granted routinely; indeed, the court usually will refuse to exercise its equity jurisdiction unless the right to relief is clear." (footnote omitted)). An injunction "may issue only in cases presenting some acknowledged and well-defined ground of equity jurisdiction, as when it is necessary to prevent irreparable injury or a multiplicity of suits." *Vt. Div. of State Bldgs.*, 138 Vt. at 256-57, 415 A.2d at 193. As a general matter, "the main prerequisite to obtaining injunctive relief is a finding that plaintiff is being threatened by some injury for which he has no adequate legal remedy." Wright, *supra*, § 2942, at 44; see also *Gerety v. Poitras*, 126 Vt. 153, 155, 224 A.2d 919, 921 (1966) ("Equity will not afford relief where there is a plain, adequate, and complete remedy at law. And if the complainant does have such remedy, and the main cause of action is of a legal nature, equity has no jurisdiction." (citation omitted)). "Probably

the most common method of demonstrating that there is no adequate legal remedy is by showing that plaintiff will suffer irreparable harm if the court does not intervene and prevent the impending injury." Wright, *supra*, § 2944.

¶ 8. NEC fails to demonstrate, as predicates for the injunctive relief sought, that it exhausted its administrative remedies and that it has no adequate legal remedy. See *Smith v. Highway Bd.*, 117 Vt. 343, 349, 91 A.2d 805, 810 (1952) (stating that as a general rule, a party must exhaust his or her administrative remedies before seeking equitable relief, and "[w]here an administrative agency has primary jurisdiction of the question in issue, the courts ordinarily will not grant injunctive relief prior to a decision by the agency"). NEC has not requested, nor has the Board issued, an order directing Entergy to cease operating Vermont Yankee on the grounds advanced by NEC here. Nor is it established that Board enforcement of Condition 8, if applied for, would necessarily be covered by the federal injunction enjoining enforcement of Act 160.

¶ 9. Moreover, to the extent that NEC asserts that Condition 8 of the Sale Order is actionable under 30 V.S.A. § 15, the Board decisions on which its position rests are currently on appeal in this Court and are not yet final. The Board developed a record in those cases, and the merit of the Board's actions can be determined in the appeals now before this Court. It would make little sense for this Court to retry the background of those orders in the context of an action to enforce Condition 8 in a separate proceeding under 30 V.S.A. § 15. Given the ongoing legal processes in place, we decline to grant NEC's request for equitable relief. NEC's complaint is therefore dismissed.

*Dismissed.*

Note: Johnson, J. (Ret.), was present for for oral argument but did not participate in this decision.