## AGENCY OF NATURAL RESOURCES v. LYNDONVILLE SAVINGS BANK & TRUST COMPANY

[811 A.2d 1232]

No. 01-190

August 19, 2002. The Lyndonville Savings Bank & Trust Company appeals from the environmental court's order declining to award the Bank attorney's fees incurred in an enforcement action voluntarily dismissed by the Agency of Natural Resources following the first day of hearing. We affirm.

For the most part, the relevant facts are not in dispute. On February 5, 1999, the Agency issued an administrative order pursuant to 10 V.S.A. § 8008 alleging that the Bank's logging activities at Bolton Valley during the summer of 1997 violated Vermont's "heavy cutting" law, 10 V.S.A. § 2625, which had been enacted earlier that summer. The law requires a permit to log forty or more acres of woodland below a certain density. Ken Davis, an outspoken opponent of the law, had conducted the Bolton Valley logging operation for the Bank and was obligated by an indemnification agreement with the Bank to pay any fines imposed as the result of the operation. The Agency alleged that the Bank had cut plus or minus sixty-four acres, and imposed a civil penalty of $22,000.

The Bank challenged the administrative order in the environmental court. After the Agency filed a pretrial memorandum on May 26, 1999, both parties filed various motions to compel additional discovery. Approximately one week before the scheduled September 22, 1999 hearing, the court granted the Agency's motion to amend its administrative order to allege that the heavy cut had taken place on forty or more acres. The day before the hearing, the Bank served the

Agency with a motion for sanctions under V.R.C.P. 11, asserting that the Agency's decision to proceed with the enforcement action against the Bank was patently frivolous because the Agency had made so many mistakes in conducting its survey of the operation that it would be unable to prove that the Bank had heavily logged forty or more acres, in violation of the law.

The following day, the hearing proceeded with the State calling its first witness, the state forester who had investigated the Bank's logging operation. Midway through direct examination, the court permitted counsel for the Bank to conduct a voir dire examination of the witness concerning a computer-generated map of the cut area that the Agency sought to put into evidence. The examination revealed several discrepancies between the scale of the underlying map and the scale of the inspected areas. The hearing concluded with the court directing the Agency to arrange for the computer file of the base map of the cut area to be retrieved and printed, for a one-inch scale line to be physically drawn on the new printout, and for the inspection lines to be replotted on the new computer-generated base map. New hearing dates were set for October 12, 19, and 25. On October 7, 1999, the Agency moved to dismiss the proceeding under V.R.C.P. 41(a)(2). In response, the Bank requested reimbursement for its costs, expenses, and attorney's fees. On November 17, 1999, the court ordered that the dismissal be with prejudice and scheduled an evidentiary hearing on the Bank's motion for Rule 11 sanctions. The Agency moved for reconsideration, and on January 26, 2001, the court denied the Bank's motion for attorney's fees and costs, except for the Bank's expert witness fees from the September 22 hearing. The court also gave the Agency the option of dismissing the case with prejudice or dismissing the case without prejudice but being obligated to reimburse the Bank for additional fees. The Agency elected to dismiss the case with prejudice.

On appeal, the Bank first argues that the court erred in concluding, as a matter of law, that it could not consider an award of attorney's fees because the Agency voluntarily dismissed its enforcement action within twenty-one days of the Bank's service of its Rule 11 motion. Before addressing this argument, we must examine Rule 11, relevant case law, and the environmental court's reasoning in denying the Bank's motion for attorney's fees. Rule 11 imposes upon attorneys and unrepresented parties an obligation to present the court with only those pleadings that assert claims, defenses or other legal positions "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." V.R.C.P. 11(b)(2); see *Bennington Realty, LLC v. Jard Co.*, 169 Vt. 538, 538, 726 A.2d 56, 57 (1999) (mem.). Parties seeking Rule 11 sanctions must make the request separately from other motions or requests, and must serve the motion, including a description of the specific conduct complained of, on the party alleged to have violated the rule. V.R.C.P. 11(c)(1)(A). Under Rule 11's "safe-harbor" provision, which was added as part of a 1996 amendment adopting the amended federal rule, the motion for sanctions "shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." The provision is intended to provide protection against sanctions when lawyers or unrepresented litigants timely withdraw or correct potential violations brought to their attention. See Reporter's Notes, 1996 Amendment, V.R.C.P. 11. Thus, under the safe-harbor provision, sanctions are generally un-

available, as a matter of law, if the moving party fails to abide by the rule's procedural requirements. *Bennington Realty*, 169 Vt. at 539, 726 A.2d at 58.

Here, the environmental court ruled that Rule 11 sanctions were not available to the Bank because the Agency moved to dismiss its underlying administrative order within the twenty-one-day safe-harbor period, and further because the alleged misconduct centered around prelitigation activities not governed by the rule. We uphold the trial court's ruling for the more fundamental reason that V.R.C.P. 11 is inapplicable in this case. Rule 11 prohibits certain misconduct by "an attorney or unrepresented party," V.R.C.P. 11(b), and allows sanctions against those persons, *id.* 11(c). While the Bank mentioned the lawyer for the Agency of Natural Resources in its original motion, its real target was the Agency, and it sought sanctions against the Agency. Moreover, it wanted sanctions based on the Agency's filing of the enforcement order even though that order was not a paper presented to the court as required by Rule 11(b). Sanctions against a represented party are not covered by Rule 11; nor are sanctions based upon out-of-court activity.

There may be some confusion in this area of the law caused by our memorandum decision in *Bennington Realty*, where we disposed of a Rule 11 appeal on grounds similar to those invoked here. In that case, as here, the moving party also sought sanctions on other grounds, particularly under *Cameron v. Burke*, 153 Vt. 565, 576, 572 A.2d 1361, 1367 (1990), which allows sanctions for bad faith or vexatious actions or conduct which is unreasonably obdurate or obstinate. We responded that Rule 11 is the "appropriate vehicle for invoking these principles of equity and justice," and that a party could not evade the safe-harbor provision of Rule 11 by labeling its motion as proceeding under *Cameron*. *Bennington Realty*, 169 Vt. at 539, 726 A.2d at 58. But

our holding in *Bennington Realty* did not alter the fact that Rule 11 is the appropriate vehicle only if one seeks sanctions against an unrepresented party or a lawyer for a party. Neither Rule 11 nor its safe-harbor provision applies if the moving party is seeking sanctions against a represented litigant.

In any event, even putting aside the fact that the Bank is seeking sanctions based on the conduct of a represented party rather an attorney or an unrepresented party, we agree that the Agency's voluntary dismissal within the safe-harbor period precluded the imposition of sanctions. In its one-page argument challenging the environmental court's decision in this regard, the Bank contends that the Agency should be estopped from asserting the application of the safe-harbor provision because the Agency delayed in disclosing information that would have revealed earlier the total absence of support for the administrative order. In making this argument, the Bank relies upon *Divane v. Krull Electric Co.*, 200 F.3d 1020 (7th Cir. 1999).

*Divane* offers no support for the Bank's position. In *Divane*, the trial court granted the plaintiffs' post-judgment motion for Rule 11 sanctions, finding that the lack of evidentiary support for the defendant's counterclaim could not have been determined until the trial was completed. *Id.* at 1025. Rather than accept the trial court's reasoning that the safe-harbor period was an unnecessary formality where the plaintiffs had filed a post-judgment motion for sanctions, the Seventh Circuit relied on the fact that the plaintiffs had previously served a pretrial motion for sanctions on the defendant at the same time that they had asked the trial court to strike the counterclaim as frivolous. *Id.* at 1026. Although the trial court eventually dismissed the pretrial motion as premature, the defendant had effectively been put on notice that the plaintiffs were seeking Rule 11 sanctions against him for filing a

frivolous counterclaim; therefore, defendant had been given an opportunity to respond by withdrawing the counterclaim, and the safe-harbor provision was satisfied. See *id.* at 1026-27. A similar situation does not exist here. *Divane* does not stand for the proposition, as the Bank suggests, that the safe-harbor provision may be ignored when a party incurs litigation costs before becoming aware of Rule 11 violations that resulted in those costs.

Nevertheless, the Bank insists that there is a basis for its claim of estoppel, if not under Rule 11, then under the bad-faith exception to the American Rule under which each party assumes its own attorney's fees. Although we have stated that a party may not defeat Rule 11's safe-harbor provision "by invoking the same residual powers of equity and justice that form the basis of the rule and its requirements," *Bennington Realty*, 169 Vt. at 539, 726 A.2d at 58, there is no doubt that courts have inherent power, independent of Rule 11, to award attorney's fees in exceptional cases based on the bad-faith conduct of litigants. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); *Cameron v. Burke*, 153 Vt. at 576, 572 A.2d at 1367; see also Reporter's Notes, 1996 Amendment, V.R.C.P. 11 (court may look to its inherent judicial power to award attorney's fees). This power must be exercised with cautious restraint, however — only in those exceptional cases where justice demands an award of attorney's fees, see *Chambers*, 501 U.S. at 44; *In re Gadhue*, 149 Vt. 322, 330, 544 A.2d 1151, 1156 (1987), such as where a party is unjustly forced to endure a second round of litigation, see *Vt. Women's Health Center v. Operation Rescue*, 159 Vt. 141, 150-51, 617 A.2d 411, 416-17 (1992); *In re Gadhue*, 149 Vt. at 329, 544 A.2d at 1155.

Here, the environmental court found that even assuming the Bank could avoid the safe-harbor provision by asking the court to invoke its residual powers of equity, the Bank had failed to demonstrate that it was forced to seek judicial assistance to secure a clearly defined and established right that should have been freely enjoyed without judicial intervention. The court explicitly referred to the fact that the Bank had not been forced to engage in a second round of litigation, but also concluded in other sections of its decision that none of the documents filed by the Agency in this case contained frivolous contentions or were filed for an improper purpose, and that, until the first day of trial, the Agency had reason to believe that its administrative order had evidentiary support. The record supports these findings. Indeed, the Bank's own proffer of bad-faith litigation made to the environmental court and referenced here on appeal states that (1) the Agency's voluntary dismissal, standing alone, is tantamount to a concession that the administrative order was without merit; (2) the Agency recklessly proceeded with a close case even though it was aware of problems involving difficult density determinations; (3) the Agency's own report indicated problems with the implementation of the new law; (4) the Agency had reason to doubt the investigating forester's calculations in this close case; and (5) given the uncertainty over the methodology employed by the forester, "it would seem prudent" for the Agency to have selected an independent expert to review the forester's work before the administrative order was issued. In short, the record, including the Bank's own proffer, indicates that implementation of the new law was difficult, that the methodologies were uncertain, and that this was a close case as to whether forty or more acres were heavily logged, in violation of the new law.

As the trial court noted, essentially, the Bank proffered that the Agency had acted recklessly in not acting sooner to determine whether in fact the logging operation constituted a violation of the law. As a matter of law, such reckless-

ness, even if true, is not a sufficient showing of bad faith for the court to have awarded attorney's fees under the limited bad-faith exception to the American Rule. See *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 905 (D.C. Cir. 1998) (bad-faith standard is more stringent than recklessness standard); *Chambers*, 501 U.S. at 47 (bad-faith standard under court's inherent power to award attorney's fees is more stringent than Rule 11 standard). The Bank has failed to show that this is one of those exceptional cases where attorney's fees should be awarded because a litigant acted vexatiously, in an unreasonably obdurate or obstinate manner, or in bad faith.

The Bank argues, however, that the environmental court erred by refusing to allow additional discovery and an evidentiary hearing so that it could demonstrate that the Agency's decision to issue the underlying administrative order and continue to pursue it without evidentiary support was based on bad faith motives rather than a legitimate effort to enforce the new law. Apparently, the Bank hoped to uncover evidence to support its theory that the Agency's dogged prosecution of the administrative order was an attempt to punish Ken Davis for his outspoken objections to the new law.

We conclude that the environmental court acted well within its discretion in refusing to grant the Bank additional discovery and an evidentiary hearing to engage in a fishing expedition. See *LaPrade*, 146 F.3d at 904 (appropriate standard for reviewing decision whether to hold evidentiary hearing on attorney's fees is abuse of discretion); see 4 V.S.A. § 1004(b) (in connection with environmental enforcement actions, no discovery other than that explicitly provided shall be permitted except under extraordinary circumstances). The court had followed the case throughout the litigation and was acutely aware of the difficulties and shortcomings of the Agency's case. Indeed, it was the court that ordered the Agency to produce a new base map to determine the cut area. Thus, the court had already observed the factors most relevant to determining whether additional discovery and an evidentiary hearing were required to address the Bank's motion for sanctions. Cf. *LaPrade*, 146 F.3d at 907 (hearing not required on request for Rule 11 sanctions when trial court has already observed elements of litigation most relevant to criteria for imposing sanctions); 5A C. Wright & A. Miller, Federal Practice and Procedure § 1337, at 123-24 (2d ed. 1990) (hearing on Rule 11 sanctions generally not necessary when court has observed conduct of litigation; additional discovery should be allowed only in extraordinary circumstances). Of course, the Bank may seek an evidentiary hearing based on an allegation of malicious prosecution in a separate action, see Reporter's Notes, 1996 Amendment, Rule 11 (parties retain ability to bring action for malicious prosecution or abuse of process), and in fact has apparently already done so.

Finally, the Bank argues that the court erred by concluding that attorney's fees were not warranted as a discovery sanction on the ground that no discovery order was violated. According to the Bank, the court ignored the fact that certain discovery is automatic under 4 V.S.A. § 1004(a) and V.R.C.P. 76(d)(3)(B), and that the Agency's pretrial memorandum was incomplete and thus failed to satisfy the rule and statute. We find no merit to this argument. The Bank has failed to show that the Agency violated a specific discovery order, as required by V.R.C.P. 37(b)(2). Even assuming that the Agency filed an incomplete pretrial memorandum, the court acted within its discretion in giving the Agency additional time to produce its expert. See *Greene v. Bell*, 171 Vt. 280, 283, 762 A.2d 865, 869 (2000) (trial court has inherent authority to enforce discovery requirements by excluding evidence, granting continuances, or taking other appropriate action;

absent abuse of discretion, court's decision regarding imposition of discovery sanctions will not be disturbed on review).

*Affirmed.*