*123 Skoglund, J.
¶ 1. The Town of Milton successfully brought an action to enforce a town order requiring defendant Armand Brisson to remediate problems with his residence that constituted a public health hazard. Defendant does not contest either the civil penalty or the compensatory costs for engineering fees assessed against him by the court, but contends that the court’s award of attorney’s fees was neither authorized under the applicable statute nor warranted under an equitable exception to the American Rule requiring each party to bear the cost of its own attorney’s fees. We agree and therefore vacate the attorney’s fee award.
¶ 2. The facts of this case are not in dispute. Defendant was the owner of a two-story brick structure built around 1850 and located in the Town of Milton at the intersection of Main Street and U.S. Route 7.[1] He had lived in that building for most of his life. At the time of the events in question, he was living on the second floor of the building and utilizing the large attic for storage, while renting the first floor for use as a small bar/restaurant.
¶ 3. On May 6, 2012, the Milton Police Department notified the Town’s deputy health officer that bricks were falling off the western exterior of the building onto the street and sidewalk below. After confirming this and observing that a part of the western brick wall was bulging out, the health officer issued an emergency health order later that same day condemning the building and declaring it unfit for any use or occupancy. See 18 V.S.A. § 127(a) (“A health officer may, without a prior hearing, issue an emergency health order when necessary to prevent, remove, or destroy an imminent and substantial public health hazard, or to mitigate an imminent and substantial significant public health risk.”). The order required defendant to hire a structural engineer within twenty-four hours to examine the building and recommend necessary repairs, and to complete those repairs within seven days.
¶ 4. The next day, the person who served as the Town’s zoning administrator, primary health officer, and secretary for the local health board visited the site with representatives from the Milton Police Department and the Vermont Agency of Transportation (AOT). Over the next several days, additional bricks fell and the bulged area of the wall collapsed. On May 11, AOT workers *124 installed concrete “Jersey barriers” along the western side of the building adjoining Route 7 as a buffer zone.
¶ 5. Because there was a bar/restaurant on the ground floor, the building was a public building subject to state codes. As a result, the regional assistant fire marshal for the Vermont Department of Public Safety, along with the town health officer and defendant, inspected the building on May 11, only to learn that the bar/ restaurant had recently ceased operations. The fire marshal and health officer performed a visual inspection of the interior and exterior of the building’s first floor, but defendant did not permit access to his living quarters on the second floor and in the attic.
¶ 6. Following the site visit, the state fire marshal issued an initial report prohibiting all public use or occupancy of the building. Apart from confirming apparent structural defects in the supporting walls, the report noted signs of heavy rotting in the roof area and damage to the slate roof, as well as moisture damage in various interior areas. The report recommended a structural evaluation and electrical inspection to be completed by May 18.
¶ 7. On May 21, the town board held its required hearing on the May 6 emergency order. See id. § 127(c) (“A person to whom an emergency health order is directed shall be given the opportunity for a hearing within five business days of the issuance of such order.”). Defendant appeared and acknowledged that he had taken no action in response to the May 6 order. At the conclusion of the hearing, the town board issued an order finding that “[a] portion of the brick wall on the northwest corner of the building is collapsing into River St/US Route 7, a condition that endangers passing motorists and pedestrians.” The order further found the condition constituted “an immediate and substantial public health hazard due to the imminent danger of a collapse, the detrimental effect such a collapse would create on the structural integrity of the remaining building, and the building’s close proximity to River Street/US Route 7, and Ice House Road.” The town board ordered that the building remain uninhabited until repaired to the satisfaction of the board, that defendant begin work to stabilize and repair the structure within twenty-four hours, and that the structure be demolished if defendant did not commence the repair work within twenty-four hours.
¶ 8. Defendant appealed the May 21 order to the state board of health, which considers such appeals de novo. Id. § 128 (providing *125 that any person aggrieved by local health board order may appeal to state board of health, which shall consider matter de novo in contested case hearing). On July 30, 2012, after a contested hearing, the state board affirmed the Town’s order, concluding there was a continuing risk of falling brick and further building collapse which posed a significant public health risk. Meanwhile, on June 7, 2012, the Town filed the instant action seeking to enforce the local board’s May 21 order by way of a preliminary injunction. On June 21, following a hearing, the superior court issued a preliminary injunction ordering defendant to: (1) immediately remove loose brick on the west wall and install a temporary framework to support the brick above the area where the collapse occurred; (2) install a protective tarp over the west wall of the building pending completion of the repairs; (3) rebuild the missing portion of brick within sixty days; (4) install a protective tarp over the south wall due to the Town’s concerns over some cracking and movement of brick there; and (5) contract with his engineer to provide guidance and oversight as to the building’s repair.
¶ 9. On September 9, 2012, the Town filed a motion for contempt based on defendant’s failure to comply with the preliminary injunction. A hearing on the motion was held on November 27, 2012. At the conclusion of the hearing, which defendant did not attend, the superior court issued an order finding him in civil contempt for a willful violation of the court’s previous order. The court acknowledged that defendant had filled in new brick on the west side of the building where the collapse had occurred, but found that defendant had not yet done masonry work on the south wall of the building or hired a structural engineer. The court ordered as follows: (1) town representatives were authorized to enter the building on December 3, 2012 to conduct a structural inspection of the interior and exterior of the building; (2) defendant was required to remove rubble and scaffolds from the west side of the building within five days so that the Jersey barriers could be removed; and (3) the Town would be awarded attorney’s fees, not to exceed $600, as a sanction incurred in the contempt motion.
¶ 10. Defendant sought reconsideration of the November 27 order, and following a hearing, the superior court issued a December 19, 2012 order continuing the contempt hearing to mid-January 2013. In the order, the court acknowledged the *126 testimony of defendant’s contractor, who explained what repairs had been done and what work still needed to be done before the scaffolding and Jersey barriers could be removed. The court indicated that it would consider lifting the attorney’s fee sanction if a December 27 site visit by the town health officer went well and there was a solid plan to repair the building’s remaining problems.
¶ 11. On February 13, 2013, the superior court held a hearing on defendant’s motion to reconsider its contempt order. Two days later, the court issued an entry order denying the motion for reconsideration, stating that the masonry repairs ordered on June 21, 2012 still had not been completed. The court ordered defendant, by July 1, 2013, to: (1) complete the masonry repairs on the west side of the building; (2) repair fascia and eaves showing signs of rot; and (3) repair the slate roof to prevent potential injury to passersby. The court deferred any final ruling on its request for attorney’s fees, stating that if defendant completed the required work in a professional manner, “it is likely that he will be relieved of the obligation to pay the legal fees.” The court stated, however, that “[i]f the work is not performed — or is performed in an inadequate manner — the court will require him to pay the legal fees as a sanction for the prior contempt.” On March 19, 2013, the court granted the Town’s motion to amend its February 15 order to require masonry repairs to the south side of the building as well as the west side.
¶ 12. Following a hearing on August 19, 2013, the court ordered that before October 15, 2013, “defendant shall complete repointing of the brick facade, soffit and fascia repair, and completion of the repair of the metal cap along the peak of the roof.” The court set a status conference for mid-October 2013 to determine whether defendant had “completed repairs sufficient to meet the concerns raised by the Town under 18 V.S.A. § 130 of hazards to the public health.” ‘
¶ 13. By the time the status conference was held on October 21, a new judge had been assigned to the case. Following the status conference, the court noted several repairs that had been done and several that still needed to be done, but concluded that the specific tasks that the August 19 order required of defendant had not been substantially completed.
¶ 14. In the spring of 2014, the superior court granted the Town’s motion to conduct a more invasive structural assessment of *127 the building. That assessment took place on June 4, 2014, and a detailed report was filed three weeks later. The report noted that the load-bearing capacity of the second floor was well below code requirements and that there was some damage to the slate roof. The report indicated that the brick work and fascia issues in both the south and west areas of the building had been adequately addressed and repaired, but nonetheless recommended that no public use or occupancy of the building be permitted until defendant addressed load-bearing issues concerning the second floor and attic, and a more thorough investigation of the roof was done.
¶ 15. A final hearing on the Town’s motion for sanctions and penalties pursuant to 18 V.S.A. § 130 was held on July 31, 2014. On December 1, 2014, the court issued a decision and judgment prohibiting defendant from any and all public use of the building and assessing against defendant $22,256 that included a civil penalty of $1788 ($2 for each day defendant was clearly in violation of the Town’s health order affirmed on July 30, 2012), $7886 as reimbursement for the Town’s out-of-pocket engineering fees, and $12,582 in attorney’s fees.
¶ 16. The court acknowledged the determination in its October 21, 2013 order that defendant had complied with the specific requirements of the August 19, 2013 order, but stated that “those items alone had never been the sole concern of the Town or the State with regard to over-all safety and risk of public injury because of the deteriorated condition of the Defendant’s building.” The court noted in particular load-bearing issues which could not have been resolved until the building was assessed by a structural engineer, which did not take place until the summer of 2014.
¶ 17. As related above, in addition to granting a permanent injunction as to public use or occupancy of the building and assessing civil penalties, the court awarded the Town $12,582 in attorney’s fees. The court concluded that the fees were recoverable as a matter of right under 18 V.S.A. § 130(b)(5) and also as an equitable exception to the general rule that each party bear the cost of its own attorney’s fees.
¶ 18. On appeal, defendant does not challenge the issuance of the permanent injunction or the assessment of the civil penalty, but argues that § 130(b)(5) does not authorize the award of attorney’s fees, and that, to the extent the court relied upon the equitable exception to the American Rule requiring parties to bear *128 the cost of their own attorney’s fees, it abused its discretion in doing so.
¶ 19. Regarding the statutory issue, § 130 authorizes the state health commissioner or a local board of health to bring an action in superior court to enforce orders aimed at mitigating or removing a public health hazard or risk. 18 V.S.A. § 130(a). The section further authorizes the court to grant injunctive relief and to exercise all of the powers available to it, including enjoining future activities that may contribute to a public health hazard or risk, ordering remedial actions to mitigate the hazard or risk, ordering facilities designed to mitigate the hazard or risk, ordering compensation for any property destroyed or damaged, ordering reimbursement from persons who caused government expenditures, and levying civil penalties. Id. § 130(b). The provision at issue in this case is § 130(b)(5), which provides that the court may order “reimbursement from any person who caused governmental expenditures for the investigation and mitigation of the public health risk or the investigation, abatement, or removal of public health hazards.” Id. § 130(b)(5).
¶ 20. The term “governmental expenditure” is not defined in the statute. Citing the broad dictionary definition of the word “expenditure” — the act or process of paying out — and the fact that its litigation expenses were directly related to its efforts to enforce the public health order, the Town argues that the plain meaning of the term “governmental expenditures” in § 130(b)(5) encompasses its attorney’s fees incurred in its enforcement action against defendant. We disagree.
¶21. “When interpreting a statute, our principal goal is to effectuate the intent of the Legislature.” Vermont Golf Ass’n v. Dep't of Taxes, 2012 VT 68, ¶ 7, 192 Vt. 224, 57 A.3d 707 (quotation omitted). We look first to the statutory language to determine legislative intent, “but, if doubts exist, the real meaning and purpose of the Legislature is to be sought after and, if disclosed by a fair and reasonable construction, it is to be given effect.” In re Carroll, 2007 VT 19, ¶ 9, 181 Vt. 383, 925 A.2d 990 (quotation omitted); see Paquette v. Paquette, 146 Vt. 83, 86, 499 A.2d 23, 26 (1985) (stating that if statutory language is ambiguous or doubts exist about its meaning, “the legislative intent should be gathered from a consideration of the whole and every part of the statute, the subject matter, the effects and consequences, and the *129 reason and spirit of the law” (quotations omitted)). The proper construction of a statute “is a question of law subject to nondeferential and plenary review.” Carroll, 2007 VT 19, ¶ 9.
¶ 22. As indicated, the provision at issue allows the court to order reimbursement from persons who caused governmental expenditures “for the investigation and mitigation of the public health risk or the investigation, abatement, or removal of public health hazards.” 18 V.S.A. § 130(b)(5). Although this broad language could be construed to include attorney’s fees as costs expended indirectly for the investigation of a public health hazard, it also could be construed more narrowly to mean only those costs directly incurred in the investigation, mitigation, abatement, or removal of public health risks or hazards — such as fees for engineers investigating the risk or hazard or for companies involved in mitigating or removing the risk or hazard. Indeed, this latter interpretation is the more likely legislative intent underlying the statute, given that the provision does not refer to litigation costs and that attorney’s fees are a unique type of expense that is subject to special rules and treatment.[2]
*130 ¶ 23. Generally, when the Legislature has intended to authorize the award of attorney’s fees in a particular action — beyond that permitted under the common law — it has done so explicitly. See, e.g., 9 V.S.A. § 2458(b)(3)-(4) (authorizing court in consumer protection actions, among other things, to order reimbursement for state’s “expenses in investigating and prosecuting the action” and to “offset the costs of providing legal services” from special funds); 9 V.S.A. § 4458(a)(3) (allowing tenants to recover “damages, costs, and reasonable attorney’s fees” from landlords for failure to remedy habitability issues); 13 V.S.A. § 3701(f) (providing that persons who suffer damages as result of crime of unlawful mischief “may recover those damages together with reasonable attorney’s fees in a civil action”); 21 V.S.A. § 678(a)-(b) (providing that commissioner of labor may allow claimants in workers’ compensation actions “to recover reasonable attorney’s fees when the claimant prevails,” and that claimants in appeals to superior or supreme court “shall be entitled to reasonable attorney’s fees as approved by the Court”); 32 V.S.A. § 5258 (providing that fees and costs following delinquent tax sale of real property include “expenses actually and reasonably incurred by the tax collector for legal assistance in the preparation for or conduct of said sale when authorized by the selectboard”).
¶ 24. “Where the Legislature has demonstrated that it knows how to provide explicitly for the requested action, we are reluctant to imply such an action without legislative authority.” Daniels v. Vt. Ctr. for Crime Victims Servs., 173 Vt. 521, 523, 790 A.2d 376, 379 (2001) (mem.). This is particularly true when the implication would establish a statutory meaning that diverges from an established common law rule — in this case, the American Rule that each party bear the cost of its own attorney’s fees. See Murphy v. Sentry Ins., 2014 VT 25, ¶ 52, 196 Vt. 92, 95 A.3d 985 (“[LJanguage of a statute or rule will not change common law by doubtful implication; it is only overturned by clear and unambiguous language.” (quotation omitted)).
¶ 25. The Town argues, however, that in Town of Hinesburg v. Dunkling, 167 Vt. 514, 711 A.2d 1163 (1998), this Court upheld the award of attorney’s fees to a municipality under former 24 V.S.A. § 4444(a), even though that statute did not expressly permit the court to award attorney’s fees. In upholding the award of attorney’s fees in that case, we noted that the trial court based its assessed fine against the defendant on the town’s attorney’s fees *131 and costs, and that the fine was within the amount permitted by statute. We concluded, therefore, that “determining the amount of the fine with regard to [the] Town’s attorney’s fees and costs was reasonable.” Dunkling, 167 Vt. at 529, 711 A.2d at 1171; see City of St. Albans v. Hayford, 2008 VT 36, ¶ 18, 183 Vt. 596, 949 A.2d 1058 (mem.) (describing Dunkling as holding that trial court “acted within its broad discretion by basing its fine on the attorney’s fees and other costs incurred by the town in bringing the enforcement action”). In other words, in Dunkling, rather than uphold an award of attorney’s fees, we upheld a fine that was based on the town’s litigation costs, including its attorney’s fees. Hence, Dunkling adds no support to the Town’s position here.
¶ 26. In Merlino v. Delaware County, 728 A.2d 949 (Pa. 1999), the Pennsylvania Supreme Court addressed an issue similar to the one presented in this case.[3] There, the question was whether citizens prevailing in an action under the state’s storm management act could recover attorney’s fees under a provision of the act allowing for an award of “the expense of such proceedings” against the violating party. Id. at 950 (quotation omitted). The trial court determined that the broad dictionary definition of the *132 word “expense” encompassed any expenditure incurred in a proceeding brought under the act, including attorney’s fees. The supreme court agreed “as a matter of common parlance” that attorney’s fees could be considered an expense under the statutory language, but noted that the American Rule disallowed attorney’s fees “absent an express statutory authorization.” Id. at 951. Thus, the court concluded that in the absence of such express statutory authorization, which the general assembly had made in other statutes, the word “expense” was an insufficient basis to award attorney’s fees under the act. Id.
¶ 27. That conclusion rings even truer in the case before us, where the provision containing the term “governmental expenditures” allows reimbursement for the costs of investigating and mitigating public hazards without mentioning legal proceedings or litigation costs. Accordingly, we hold that § 130(b)(5) does not authorize the superior court to award attorney’s fees as part of the reimbursement allowed therein.
¶ 28. The Town argues, however, that even if § 130(b)(5) does not authorize an award of attorney’s fees, the superior court acted within its discretion in awarding the fees in the alternative based on an equitable exception to the American Rule. Again, we disagree.
¶ 29. As noted, Vermont follows the “American Rule,” under which each party bears the cost of its own attorney’s fees absent a statutory or contractual provision authorizing an award of attorney’s fees. See Southwick v. City of Rutland, 2011 VT 105, ¶ 5, 190 Vt. 324, 30 A.3d 1298. This Court, however, focusing on “the historic powers of equity courts to award attorney’s fees as the needs of justice dictate,” has recognized a flexible exception to the American Rule. See In re Gadhue, 149 Vt. 322, 327, 544 A.2d 1151, 1154 (1987). In Gadhue, we expanded this exception from situations where the wrongful act of one person caused another person to incur litigation expenses in legal proceedings involving a third person, see Albright v. Fish, 138 Vt. 585, 591, 422 A.2d 250, 254 (1980), to situations where the bad faith action of one person caused another person to incur litigation expenses in unnecessary judicial proceedings with the wrongful actor. 149 Vt. at 328-29, 544 A.2d at 1154-55.
¶ 30. We concluded in Gadhue that an award of attorney’s fees to the plaintiff was appropriate in that case as an exception *133 to the American Rule where the defendant had built an unpermitted structure before plaintiff prevailed in an initial round of litigation challenging the structure, thereby requiring the plaintiff to engage in a second round of litigation to have the structure removed. Id. at 329, 544 A.2d at 1155; see Vt. Women’s Health Ctr. v. Operation Rescue, 159 Vt. 141, 150-51, 617 A.2d 411, 417 (1992) (stating that Gadhue “fell within an exception to the ‘American Rule’ applicable where an individual is forced to enter a second round of litigation to secure a clearly defined right that should have been granted without judicial intervention”). We stated, however, that “there is no suggestion that plaintiff would be entitled to litigation expenses incurred during her initial appeal,” and that “the exception to the American Rule takes form during the second round of litigation in this case.” Gadhue, 149 Vt. at 329, 544 A.2d at 1155. We also cautioned, on multiple occasions in the opinion, that the equitable exception was appropriate “ ‘only in exceptional cases and for dominating reasons of justice! ” Id. at 328, 330, 544 A.2d at 1154, 1156 (quoting Sprague v. Ticonic Nat’l Bank, 307 U.S. 161, 167 (1939)) (emphasis in Gadhue). Further, we emphasized that the exception is triggered only by conduct that could be described as in bad faith, vexatious, wanton, oppressive, or unreasonably obstinate. Id. at 329, 544 A.2d at 1155; see also Agency of Nat. Res. v. Lyndonville Sav. Bank & Trust Co., 174 Vt. 498, 501, 811 A.2d 1232, 1236 (2002) (mem.) (stating “that courts have inherent power, independent of Rule 11, to award attorney’s fees in exceptional cases based on the bad-faith conduct of litigants”).
¶ 31. We recognize that “[i]n general, awards for attorney’s fees are reviewed for an abuse of discretion,” but, on the other hand, “[o]ur standard for departing from [the American Rule] is demanding.” Knappmiller v. Bove, 2012 VT 38, ¶ 4, 191 Vt. 629, 48 A.3d 607 (mem.). As we stated in Lyndonville, the equitable power to award attorney’s fees as an exception to the American Rule “must be exercised with cautious restraint . . . only in those exceptional cases where justice demands an award of attorney’s fees.” 174 Vt. at 501, 811 A.2d at 1236.
¶ 32. With all due respect to the superior court’s discretion, this is not a case where the interests of justice demanded an award of attorney’s fees. Without discussion, the superior court stated that, in the alternative, the Town could recover its attor *134 ney’s fees under the equitable exception to the American Rule. The court made no finding of bad faith or of vexatious or wanton conduct on the part of defendant. The record, including statements in the transcripts of the hearings and in several of the earlier superior court decisions, reveals that defendant had limited means and attempted to comply with the Town’s health order, after it was upheld in July 2012 by the state board of health, within the confines of those limited means. The original health order noted only the collapsing brick wall on the west side of the building adjoining U.S. Route 7 as the condition causing a risk to the public. Within five days of the May 6, 2012 emergency order, the state addressed the immediate danger to the public by setting up the Jersey barriers. As indicated above, the court in its November 2012, December 2012, February 2013, and August 2013 orders noted progress made by defendant with respect to the ever-expanding demands of the Town. In its October 21, 2013 order, the court stated that its August 19, 2013 order had been substantially complied with, although further investigation by the Town resulted in more required repairs to the roof and load-bearing capacity of the building, which had not been addressed in the original health order.
¶ 33. Given our deference to the superior court’s discretion with respect to attorney’s fees, this is a close call. But our review of the record, including the superior court’s findings, does not reveal the type of bad-faith conduct that makes this an exceptional case in which the interests of justice supports a divergence from the American Rule as to attorney’s fees.

The superior court’s December 1, 201k decision and judgment are affirmed, in all respects, except that the court’s award of attorney’s fees is vacated.

 Oil April 27, 2016, while this appeal was pending, defendant’s attorney notified this Court that defendant, who was in his seventies, had died.

 We note that the Legislature has employed the term “governmental expenditures” in several other statutes without defining it. See 6 V.S.A. § 4995(b)(6) (authorizing court in agricultural water quality action to order, among other things, reimbursement to state “from any person who caused governmental expenditures for the investigation, abatement, mitigation, or removal of a hazard to human health or the environment”); 10 V.S.A. § 1274(a)(7) (authorizing court in water pollution control action to order, among other things, “reimbursement to any agency of federal, state or local government from any person whose discharge caused governmental expenditures”); 10 V.S.A. § 1934(a)(6) (authorizing court in action involving liquid storage tanks to order, among other things, “reimbursement to any agency of federal, state or local government from any person whose acts caused governmental expenditures under section 1283 of this title, or under subdivision 1941(b)(3) or (7) of this title and in accordance with the provisions of subsection 1941(f) of this title”); 10 V.S.A. § 6610a(a)(2)(F), (c)(2)(F) (authorizing court in waste management action to order, among other things, “reimbursement to any agency of federal, state, or local government from any person whose act caused governmental expenditures under section 1283 of this title”); 10 V.S.A. § 8221(b)(5) (authorizing court in environmental civil enforcement action to order, among other things, “reimbursement from any person who caused governmental expenditures for the investigation, abatement, mitigation, or removal of a hazard to human health or the environment”). We do not propose to construe the meaning of the term “governmental expenditures” in these statutes, which are not before us and involve distinct purposes and policies, but we find nothing in the use of the term in those statutes to suggest that the term should be construed in 18 V.S.A. § 130(b) to include attorney’s fees.

 The dissent criticizes the majority for “ignoring a far more relevant line of cases beginning with Key Tronic Corp. v. United States, 511 U.S. 809, 811 (1994),” while at the same time acknowledging that Key Tronic- “offers partial support” for the majority’s holding. Post, ¶ 46. In fact, as demonstrated by the dissent’s own discussion of the case, Key Tronic fully supports our holding to the extent that it is relevant. In any event, both Key Tronic- and the federal circuit cases that the dissent relies on are easily distinguishable because they construed a statute that expressly allows for the recovery of removal costs incurred through “enforcement activities” in response to an environmental threat, 42 U.S.C. §§ 9607(a)(4)(A), 9601(25), or the undertaking of necessary “legal” investigations, 42 U.S.C. § 9604(b). See United States v. Chapman, 146 F.3d 1166, 1174-75 (9th Cir. 1998) (allowing recovery of attorney’s fees because of specific statutory language permitting recovery of costs related to “enforcement activities” and legal investigations); B.F. Goodrich v. Betkoski, 99 F.3d 505, 528 (2d Cir. 1996) (same). As the court stated in Chapm-an, “[t]he absence of a specific reference to attorney’s fees is not dispositive if the statute otherwise evinces an intent to provide for such fees.” 146 F.3d at 1175 (quotation omitted). The federal statute at issue in the cases cited by the dissent evinces such an intent through explicit statutory language allowing for the recovery of costs associated with legal investigations and enforcement actions. No such language is present in 18 V.S.A. § 130(b), however, and thus the absence of language allowing for recovery of attorney’s fees is dispositive. In short, the cases cited by the dissent support our holding to the extent that they are relevant, and the Pennsylvania Supreme Court case cited above is directly on point and provides persuasive support for our position.