Filed 12/04/25

VERMONT SUPERIOR COURT
Windham Unit
7 Court Street
Newfane VT 05345
802-365-7979
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 25-CV-02682

---

**Town of Brattleboro v. William Hunter et al**

---

## ENTRY REGARDING MOTION

Title:          Motion for Order to Vacate Property - Verified EMERGENCY (Motion: 7)
Filer:          Robert M. Fisher
Filed Date:     November 14, 2025

The Town of Brattleboro (Town) has filed a motion in this matter seeking an order that a property be vacated. Defendants William Hunter and Community Restoration Corp. oppose the motion. The Town has not identified any authority for this court to order the requested relief and the motion is, therefore, DENIED.

### A. Procedural History[1]

On June 25, 2025, the Town brought this action against William Hunter and Community Restoration Corp. regarding property located at 6 Reynolds Drive in Brattleboro, Vermont (the Property). The Town sought to enforce a Health Order issued on September 3, 2024, by the Health Commissioners of the Brattleboro Board of Health.[2]

---

[1] The procedural history in this matter is set forth in various orders of this court.

[2] The Health Order was filed as Exhibit # 2 to the Complaint in this matter. The order required that

> The property of 6 Reynolds Drive, owned by Community Restoration Corps Inc., comply and meet the following criteria:
> Install fire and smoke detection within 24 hours per NFPA 101, 24.3.4, and 24.3.4 Detection, Alarm, and Communication Systems.
> Verify completion via Inspection on September 5, 2024, at 1:00 pm.
> 6 Reynolds Drive shall meet the means of escape requirements per NFPA 101, 24.2.2 Number and Type of Means of Escape.
> Verify completion via Inspection on September 5, 2024, at 1:00 pm.
> Remove all trash from inside and around the exterior of 6 Reynolds Drive per Brattleboro Town Ordinances 8-3. Unsanitary use of property.
> Verify completion via Inspection on September 12, 2024, at 1:00 pm.
> Should the owner not comply with this order, The Town of Brattleboro will remove all waste from the exterior of the building on September 13, 2024. The owner will be responsible for all associated costs.
> Have plumbing in the basement inspected and repaired by a Vermont-licensed plumber per Vermont Rental Housing and Health Code 5.4 (Water Supply/Wastewater Disposal.
> Verify completion via Inspection on October 31, 2024, at 1:00 pm.

On July 28, 2025, the Court issued an order that Defendants take certain actions regarding the Property. Subsequently, upon further motion by the Town, on July 30, 2025, the court issued an order providing that the Property "SHALL NOT be occupied by any persons until Defendant has complied with the terms of the July 26th Order." See Order (emphasis in original). On August 4, 2024, Defendant filed a motion to reconsider or for permission to take an interlocutory appeal. On August 13, 2025, this court denied both motions. Defendants did not seek permission to take an interlocutory appeal in the Vermont Supreme Court.

On August 19, 2025, the Town filed a Motion for Contempt. The motion noted that during an inspection on August 18, 2025, the Town Health Officer "observed multiple individuals occupying the first-floor apartment …." Motion at 1. The Motion further noted that, "on information and belief, Defendant has not complied with the terms of the July 26 Order … nor has the
property been vacated as required by the July 30 Order." *Id.*

A hearing on the Town's motion was held on September 8, 2025. The Town was represented by Attorney Robert Fisher. Defendant Hunter was present. The Town presented testimony from Assistant Fire Chief and Town Health Officer Charles Kier. Defendant Hunter testified. The court subsequently issued an order finding

> Defendants … in contempt of this court's orders of July 26 and 30, 2025.
>
> A coercive purgeable fine of $ 100 per week commencing September 15, 2025, is imposed jointly and severally on Defendants. Absent compliance or substantial steps to compliance, after four weeks the fine will increase each week by $ 100. A hearing will be held in four weeks to determine whether the contempt has been purged.
>
> Defendants are jointly and severally liable for the Town's reasonable fees and costs associated with this motion. The Town shall file its legal fees and cost supported by affidavit.

---

> The owner shall provide a report to this Health Officer from a structural engineer on the sag/list of the building, identifying its stability of the building consistent with Brattleboro Town Ordinances 8-3 (Unsanitary use of Property) and Vermont Rental Housing Health Code 10.0 (Structural Elements) and, if necessary, any needed repairs by September 19, 2024.
> Any repair noted should be completed by October 30, 2024.
> Verify completion via Inspection on October 31, 2024, at 1:00 pm.
> All other items noted in the June 6, 2023, inspection report should be corrected.
> Verify completion via Inspection on October 31, 2024, at 1:00 pm.
> This order shall be recorded in the Brattleboro Town Clerk's Office.

See Order.

September 11, 2025, Order at 7. The Order expressly authorized the Town "to conduct interior inspections of the Property with 72 hours' notice to Defendants to monitor compliance with this court's orders." *Id*.

A further hearing in this matter was held on November 3, 2025. The Town was represented by Attorney Robert Fisher. Defendant Hunter was present. The Town presented testimony from Brattleboro Fire Department Inspector Steven Nelson. Defendant Hunter testified. Various exhibits were admitted without objection.

On or about October 21, 2025, Assistant Fire Chief and Town Health Officer Charles Kier provided Defendant Hunter with notice that the Town would be conducting an inspection of the property accompanied by a structural engineer – Brud Sanderson. The inspection was scheduled for a date more than 72 hours later. Defendant Hunter provided notice to persons residing in the building that the inspection would occur.

On or about October 29, 2025, Insp. Nelson and Mr. Sanderson met with Defendant Hunter at the premises. Insp. Nelson and Mr. Sanderson proceeded to conduct an inspection of the residence. They examined the basement. Insp. Nelson – who had previously inspected the building – noted no change in the conditions in the basement. With respect to the first floor Insp. Nelson noted that smoke detectors had been installed but the other previously noted issues had not been addressed. Insp. Nelson and Mr. Sanderson were unable to complete an inspection of the 2d floor. A person present in the 2d floor apartment did not agree to allow them to enter.

Defendant Hunter acknowledged that he had not yet complied with the court-ordered requirements regarding a plumber and an electrician. Defendant Hunter had spoken to a builder – Paul Fleury – about doing work at the building but wanted to see Mr. Sanderson's report to ensure that unnecessary or inadequate work was not initiated.

On November 3, 2025, the court found after the hearing that Defendants had not yet purged the contempt of this court's orders. Defendant Hunter had taken certain steps to comply with further portions of the order. The court modified and continued the coercive fine.

 B.  The Town's Motion

On November 14, 2025, the Town filed an emergency motion to vacate 6 Reynolds Drive. The Town noted that

> Pursuant to this Court's September 5, 2025 Entry Order issued in response to Plaintiff's August 18, 2025 Motion for Structural Inspection; Plaintiff retained Brud Sanderson of Stevens and Associates, P.C., to conduct a structural inspection of the subject property. Mr. Sanderson inspected the property on October 28, 2025, and a copy of his report [was] attached [to the motion].
> …
> It is evident from this report that the subject property is not structurally sound and poses an ongoing, immediate risk of irreparable injury in the form of loss of life and significant loss of property to residents of the subject property and neighbors.

Motion at 1; 2. The Town requested relief including:

> Immediately issue an Order to Vacate the Premises of 6 Reynolds Drive until such time as the recommended improvements identified in Mr. Sanderson's report are completed, and the outstanding issues identified in Town's health order are rectified;

> Issue an Order that service may be made upon any and all occupants of 6 Reynolds Drive by personal service or by tack order pursuant to V.R.C.P. 4(d)(1)....

Motion at 2-3. On November 19, 2025, the motion was set for hearing on November 25, 2025.[3]

### C. The Hearing on the Motion

The hearing was held on November 25, 2025. The Town was represented by Attorney Robert Fisher. Defendant William Hunter represented himself. All participants appeared remotely. The Town presented testimony from Brud Sanderson and Assistant Fire Chief Keir. Defendant did not present testimony. A single exhibit – Mr. Sanderson's report – was admitted.

### D. Findings of Fact[4]

Brud Sanderson is a professional civil engineer licensed by the State of Vermont. He is a partner in the engineering firm of Stevens & Associates, P.C. He conducted an inspection of the property on October 29, 2025, accompanied by Insp. Nelson from the Brattleboro Fire Department. They were only able to inspect a portion of the property – the basement and the first floor.

During the inspection Mr. Sanderson noted various issues of significance including:

- First-floor wood columns are not straight, one is on a round footing, some are split, and some columns are resting on wet soil.
- Column footings in the basement are small and substandard.
- First-floor beam is undersized for the required loading to support the first-floor and second-floor.
- First-floor joists have been replaced with rough sawn 2x7 joists. The joists are undersized and appeared to be sistered to the original joists that are now completely deteriorated. It is difficult to determine the condition of the sill or if the joists are attached to the sill. It is not clear that the wood deck is fastened to the newer joists. Many of the new joists have shims located under them to provide bearing to the foundation.
- The first-floor deck has rot in several locations, in particular the vicinity of the first-floor bathroom and kitchen. There are coverings over deteriorated portions of the floor in the

---

[3] A status conference to address this court's contempt order had already been scheduled for November 25, 2025.

[4] Based on the credible admissible evidence adduced at the hearing.

bathroom to prevent falling through the floor. (Figure 9). There may be additional deteriorated decking that was not readily observable.

- There is sagging of the first-floor that is consistent with settlement of the middle beam/bearing line.[5]
- The first-floor is bouncy which further indicates that the beams and joists are undersized. Previous sistering of the joist may not have been properly fastened to the sill or deck throughout the first-floor.
- There is active moisture present in the basement space that promotes decay of the framing and posts.
- The basement is open to the atmosphere at the basement windows.
- There appears to be an active leak in the sewer line in the basement.
- Broken windows allow moisture and moist air into the building.
- There are openings in the wall cavity near window repairs /replacements.
- There is a stone and poly barrier on the basement floor that is traditionally used to prevent moisture from coming through the soil and into the basement. Due to the active moisture in the basement the poly barrier now collects water on the basement floor.

Report at 2-3.

"The results of the site visit indicate that the portions of the building that were observed are either structurally deteriorated or compromised, and the building should not be occupied until measures are taken to restore the building." Report at 1. Mr. Sanderson "professionally would not recommend people live" at the Property. The condition of the floor system[6] of the first floor was his primary concern. The condition of the deck, sistered floor joists and footings was concerning. Additionally, given that a bearing wall for the second floor rested on the first floor, a failure of the floor system would potentially affect the second-floor apartment.

Mr. Sanderson "recommend[ed] vacating the building" until various improvements were completed including:

> Engage a licensed engineer to design improvements to reconstruct/restore first-floor framing assembly to meet the proper standard of care consistent with multi-family residential construction by addressing the following:
> 1. Repair/Replace the decking.
> 2. Fasten the deck to the joists.
> 3. Fasten the joist to the sill.
> 4. Fasten the sill to the exterior stud wall.
> 5. Install properly sized joists.
> 6. Install properly sized beam.
> 7. Install properly sized posts and footings.
> 8. Install uplift prevention provisions.

---

[5] Mr. Sanderson conceded that it was possible that the sagging had been there for 20 years.
[6] The floor system consists of the joists, the deck, the sub floor and the floor.

Engage a licensed engineer to perform an engineering assessment of the structure in the upper floors not accessible at the time of the site visit including roof framing.
Engage a professional to provide a design to manage moisture in basement and building envelope as well as fix leaky sewer in basement.

Report at 4.

Given the condition of the building, Brattleboro Fire Department has designated the property as "No Entry." Firefighters would enter the building if there were persons known to be inside. Otherwise, firefighting would involve an exterior attack only.

Defendant Hunter indicates that he has provided notice of termination and to quit to the tenants in the property. There are two termination dates – December 15, 2025, for nonpayment of rent and March 1, 2026, for no cause.

E.  Conclusions of Law

Absent from the Town's motion was citation to statute or other law establishing the authority of this court to issue the requested order in *this* proceeding. V.R.C.P. 7(b)(1). At the hearing, the Town directed this court's attention to 18 V.S.A. §§ 128-130 and to the prior order of no occupancy issued by this court. Neither the identified statutes nor the prior order of the court provide the necessary authority for this court to issue such an order. The motion is, therefore, denied.

Pursuant to 18 V.S.A. § 126,

> The … selectboard may issue a health order to:
> (1) prevent, remove, or destroy any public health hazard;
> (2) mitigate a significant public health risk;
> (3) correct any violation of this title or any rules adopted pursuant to this title; or
> (4) correct any violation of a permit restriction or requirement.

18 V.S.A. § 126(a). A "public health hazard" is "the potential harm to the public health by virtue of any condition or any biological, chemical, or physical agent." 18 V.S.A. § 2(9).[7] "A 'public

---

[7] The statute further provides that
> In determining whether a health hazard is public or private, the Commissioner shall consider at least the following factors:
> (A) the number of persons at risk;
> (B) the characteristics of the person or persons at risk;
> (C) the characteristics of the condition or agent which is the source of potential harm;
> (D) the availability of private remedies;
> (E) the geographical area and characteristics thereof where the condition or agent which is the source of the potential harm or the receptors exist; and

health risk' means 'the probability of experiencing a public health hazard,' and a 'significant public health risk' means 'a public health risk of such magnitude that the Commissioner or a local health officer has reason to believe that it must be mitigated.'" *Dean v. Town of Hartford*, 2025 WL 966704, at *12 (D. Vt. Mar. 31, 2025) (quoting 18 V.S.A. § 2(10), (12)). A health officer may issue an emergency health order when "necessary to prevent, remove, or destroy an imminent and substantial public health hazard or to mitigate an imminent and substantial significant public health risk." 18 V.S.A. § 127(a). Health orders issued under either statute

> may require any person responsible for contributing to the public health hazard or significant public health risk to take actions to protect the public health. Such actions may include the following:
>> (1) the prohibition of transportation, sale, distribution, or supplying of water, food, or any other materials or services;
>> (2) the repair, installation, construction, operation, or implementation of purification equipment or methods;
>> (3) testing, sampling, monitoring, surveying, or other analytical operations required to determine the nature, extent, duration, or severity of the public health hazard or public health risk;
>> (4) the impounding, destruction, or removal of any public health hazard;
>> (5) the quarantine or isolation of any area, persons, animals, or materials;
>> (6) the closing of and the prohibition of assemblage in any food or lodging establishment, church, school, or any other place of assemblage;
>> (7) the cessation of any acts, discharges, or processes contributing to a public health hazard or public health risk;
>> (8) the medical or veterinary treatment of any agent that is contributing to a public health hazard or a public health risk;
>> (9) the giving of notice to potential users, including travelers, of the goods or services, of the nature, extent, and possible health effects of the public health hazard or public health risk, and precautions to be taken by such users; or
>> (10) any other affirmative acts or prohibitions necessary to mitigate a significant public health risk.

18 V.S.A. § 126(d). The statute defines the "broad scope of [a] Town's ability to prevent and require remediation of any 'public health risk' or 'hazard' under 18 V.S.A. §§ 126(a), 130(b)." *Town of Milton Bd. of Health v. Brisson*, 2014 WL 11353108, at *7 (Vt. Super. Ct., Chitt. Civ. Div. Dec. 01, 2014) (Pearson, Super. J.).

A local Board of Health "may bring an action in the Superior Court … to enforce the provisions of this title, or the rules, permits, or orders issued pursuant to this title…." 18 V.S.A. § 130(a); *Town of Milton Bd. of Health v. Brisson*, 2016 VT 56, ¶ 19 (2016). This statute authorizes injunctive relief and "to exercise all of the powers available to it, including enjoining future

---

(F) Department policy as established by rule or agency procedure.
18 § 2(2). The statute draws a distinction between health hazards that are "public" and those that are not. The factors are non-exclusive. *Dean v. Town of Hartford*, 2025 WL 966704, at *12, n. 24 (D. Vt. Mar. 31, 2025).

activities that may contribute to a public health hazard or risk, ordering remedial actions to mitigate the hazard or risk, [and] ordering facilities designed to mitigate the hazard or risk." *Id.* (citing 18 V.S.A. § 130(b)). The complaint in this matter did not cite or otherwise reference this statute. However, since the relief sought included enforcement of the Town's health order, the court infers that the relief sought and previously granted was pursuant to § 130.

The court's authority under this section is, as noted above, premised upon enforcement of the "rules, permits or orders issued pursuant to this title …" There is no health order finding that continued occupation of the property constitutes a public health hazard, significant public health hazard or public health risk. Thus, the motion *cannot* be seeking enforcement of the Town's health order. The Town's alternative argument is that this court can order relief based on enforcement of this court's order of no occupancy is not persuasive. The order was premised upon Defendants' noncompliance with the Town's health order. Defendants have taken substantial steps to comply – although compliance is by no means complete – and have taken steps to remove the occupants from the building.

The court is mindful of Justice Burgess' opinion in *Alger v. Dep't of Lab. & Indus.*, 2006 VT 115,

> Rather than call on the courts to run the Department of Labor and Industry, a task we are neither qualified nor authorized to do, plaintiffs should address their complaint to the executive branch responsible for setting code enforcement priorities ….

*Alger*, 2006 VT 115, ¶ 42 (Burgess, J., concurring in part and dissenting in part). The Town must seek further relief, in the first instance, from the Board of Health. The Town may then seek to enforce any further order pursuant to 18 V.S.A. § 130. By skipping this necessary first step, the Town is calling on the court to take actions that must be initiated by the executive branch. This court declines to do so.

F. Order

For the reasons stated above the Town's motion is DENIED.

Electronically signed: 12/4/2025 2:12:49 PM pursuant to V.R.E.F. 9(d)

_____
John R. Treadwell
Superior Court Judge

As to the facts:

25-CV-02682 Town of Brattleboro v. William Hunter et al

_____
Carolyn Partridge
Assistant Judge